No. 00-298

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 74

IN RE THE PATERNITY AND

CUSTODY OF A.D.V.

A Minor Child.

APPEAL FROM: District Court of the Sixteenth Judicial District,

In and for the County of Custer,

The Honorable Gary L. Day, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. Dennis Corbin, Attorney at Law, Miles City, Montana

For Respondent:

Cynthia K. Thornton, Attorney at Law, Miles City, Montana

Submitted on Briefs: February 16, 2001
Decided: April 26, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Vern, father of A.D.V., appeals from the Findings of Fact, Conclusions of Law and Order entered in the Sixteenth Judicial District Court, Custer County, on April 12, 2000. He raises three issues on appeal.

1. Whether the District Court adequately addressed the facts and issues presented in its written Findings of Fact, Conclusions of Law and Order.

2. Whether the District Court erred in not granting Vern residential custody of A.D.V. based on the evidence presented.

3. Whether the District Court abused its discretion by apparently rejecting the testimony of A.D.V.'s clinical therapist and the disclosures made by A.D.V. relating to sexual abuse in its Findings of Fact, Conclusions of Law and Order.

¶2 We affirm.

## BACKGROUND

¶3 A.D.V. was born on March 22, 1995, in Columbus, Montana. A.D.V.'s parents, Vern and Christina, never married. In April 1995 Vern filed a paternity action in the Thirteenth Judicial District, Stillwater County, seeking to establish his parental rights. As a result of this proceeding, Christina was awarded primary residential custody of A.D.V. Vern appealed. During appellate mediation, Vern and Christina stipulated to an amended parenting plan that was ultimately approved by the District Court on April 7, 1999. Pursuant to the amended plan, A.D.V. was to spend one month with each parent on a month to month basis until A.D.V. reached school age. At the time the amended plan was agreed upon, Vern resided in Miles City, Montana, and Christina resided in Absarokee, Montana. Christina subsequently moved to Dakota City, Nebraska, just across the river from Sioux City, Iowa. Christina's initial move was anticipated before the parties agreed to the amended parenting plan.

¶4 Vern assumed custody of A.D.V. under the new arrangement in April 1999. Vern testified that just prior to returning A.D.V. to her mother for a month long visit in May 1999, A.D.V. made disclosures to Vern suggesting that inappropriate physical contact occurred between herself and her step-grandfather, Bob, while last visiting her mother. Subsequent to these disclosures, Vern discussed the incidents with A.D.V.'s day care provider, Karla Murnin. Ms. Murnin confirmed that she had recently observed troubling

behavior in A.D.V. Vern then contacted Pamela Columbik, a clinical therapist at Eastern Montana Mental Health Center. Ms. Columbik interviewed A.D.V. and reported that the girl disclosed the inappropriate physical contact. Ms. Columbik notified the Montana Department of Public Health and Human Services (DPHHS) as mandated by law.

¶5 Vern returned A.D.V. to her mother in Nebraska on May 1, 1999. DPHHS contacted its counterpart agency in Nebraska which arranged interviews of Christina and A.D.V. After an investigation, letters of warning were sent to Christina insisting that A.D.V.'s step-grandfather not have any contact with A.D.V. pending further investigations. Testimony was presented that A.D.V. was medically examined while in Nebraska for signs of sexual abuse and none were found.

¶6 Since Christina no longer resided in Stillwater County, Vern filed a motion to change venue to Custer County, Montana, in September 1999. Venue was transferred to Custer County by order of the Stillwater District Court. In October 1999 Vern filed a motion to modify the parenting plan based on A.D.V.'s disclosures. On October 29, 1999, noting that it had not received a response from Christina, the Custer County District Court entered an ex parte order concluding that an emergency situation existed, stopping the exchange of A. D.V., and allowing A.D.V. to remain in Vern's care. The District Court subsequently issued an order for clarification indicating that Christina had filed an affidavit prior to the issuance of the ex parte order but it apparently crossed in the mail with the order. The District Court further indicated that its ex parte order would remain in full force and effect pending a full hearing.

¶7 A final hearing was conducted on February 24, 2000. Subsequent to the hearing, the District Court entered its Findings of Fact, Conclusions of Law and Order, denying Vern's motion to modify the parenting plan with limited exceptions. Vern appeals from the denial. We affirm.

## STANDARD OF REVIEW

¶8 When we review a district court's findings related to a modification of custody, the standard of review is whether those findings are clearly erroneous. When findings upon which a decision is predicated are not clearly erroneous, we will reverse a district court's decision to modify custody only where an abuse of discretion is clearly demonstrated. *In re Marriage of Abrahamson* (1996), 278 Mont. 336, 340, 924 P.2d 1334, 1337.

## ISSUE ONE

¶9 Whether the District Court adequately addressed the facts and issues presented in its written Findings of Fact, Conclusions of Law and Order.

¶10 Vern contends that the District Court did not adequately address the facts and issues presented during the hearings in its Findings of Fact, Conclusions of Law and Order. He argues that the District Court ignored the compelling disclosures of A.D.V. and the testimony of professionals who concluded that sexual abuse had occurred. Vern maintains that the District Court should have given some explanation why it discounted this important evidence in its Findings. Vern further argues that the District Court did not adequately address the best interests test set forth in § 40-4-212, MCA.

¶11 Christina states that the District Court's Findings of Fact, Conclusions of Law and Order are adequate. She points out that the court specifically referred to the witnesses' testimony, addressed its concern for the child by incorporating safeguards and counseling requirements in its order and was in the best position to weigh the evidence presented.

¶12 We agree with Christina. The trial judge faced conflicting evidence in this case. The step-grandfather testified, without subpoena, that he never inappropriately touched A.D.V. Although there was expert testimony that A.D.V. had been sexually abused, there was other expert testimony that A.D.V.'s constant travel was a possible cause of her reported conduct. There was further expert testimony suggesting that the experts who testified that abuse occurred did not follow standard protocols while interviewing A.D.V. There was lay testimony indicating that it was unlikely that the step-grandfather had an opportunity to commit the alleged abuse. After recognizing the conflicting testimony in its findings, the District Court ultimately determined that the sexual abuse had not been proven. All of this was documented in the District Court's Findings of Fact, Conclusions of Law and Order. We conclude that the District Court's Findings of Fact, Conclusions of Law and Order are sufficient to support the court's decision.

## ISSUE TWO

¶13 Whether the District Court erred in not granting Vern residential custody of A.D.V. based on the evidence presented.

¶14 Vern contends that the District Court did not adequately consider the standards

necessary to determine the "best interests" of A.D.V. as required by § 40-4-212, MCA. Vern further contends that the majority of the evidence presented indicated that A.D.V. had been molested and that the court erred in concluding that Vern had failed in his burden of proof.

¶15 In the case at hand, we are not convinced that the District Court abused its discretion in denying Vern's motion for modification of the stipulated parenting plan. Testimony of two experts, a social worker, A.D.V.'s day care provider, A.D.V.'s step-grandfather, and both parents were presented to the District Court. Contradictory testimony was presented as to A.D.V.'s behavior, as well as parental responses to A.D.V.'s behavior. There was some question as to whether behavior of the type presented by A.D.V. might be indicative not of abuse but of adjustment issues based on travel back and forth between the parents.

¶16 Because credibility determinations are within the province of the trier of fact, "[w]e will not second guess the district court's determination regarding the strength and weight of conflicting testimony." *Rafanelli v. Dale* (1996), 278 Mont. 28, 37, 924 P.2d 242, 248 (citations omitted). Thus, we cannot conclude that the findings by the District Court are clearly erroneous. In addition, although the District Court did not expressly articulate the elements of § 40-4-212, MCA, the court clearly made determinations it considered to be in A.D.V.'s best interests as referenced in the Findings of Fact, Conclusions of Law and Order. Thus, we conclude that the District Court did not abuse its discretion in denying Vern's motion to modify the parenting plan.

## ISSUE THREE

¶17 Whether the District Court abused its discretion by apparently rejecting the testimony of A.D.V.'s clinical therapist and the disclosures made by A.D.V. relating to sexual abuse in its Findings of Fact, Conclusions of Law and Order.

¶18 Vern argues that the District Court abused its discretion by improperly weighing the testimony presented. He argues that the District Court failed to believe testimony of A.D.V.'s specific disclosures and testimony presented by social workers and therapists.

¶19 As we previously stated, the Findings of Fact, Conclusions of Law and Order were sufficiently detailed to adequately support the decision of the District Court. A court need not list in its findings of fact and conclusions of law each piece of evidence weighed. Thus, failure to list the contentions of a particular witness is not sufficient to determine a

per se abuse of discretion on the part of the district court. Without a clear showing of abuse of discretion, we will not disturb the decision of the district court. *See In re Marriage of Shirilla* (1987), 225 Mont. 106, 109, 732 P.2d 397, 398-399.

¶20 Finally, we will not address Christina's contention that this appeal should be dismissed or postponed until mandatory mediation had occurred. Christina failed to raise this issue on cross-appeal, and we decline to reach the issue. See Rule 2, M.R.App.P.

¶21 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER