No. 01-773

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 138N

In re the Parenting of
CHASE MATTHEW VRANISH.

KIANE KYM LISLE,

        Petitioner/Respondent,

and

MARCO LUCIUS VRANISH,

        Respondent/Appellant.

APPEAL FROM:    District Court of the Fifth Judicial District,
                In and for the County of Beaverhead,
                The Honorable Loren Tucker, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                J. Blaine Anderson, Jr., Attorney at Law, Dillon, Montana

        For Respondent:

                Daniel R. Sweeney, Attorney at Law, Butte, Montana

Submitted on Briefs:  February 14, 2002

Decided:      June   20,   2002

Filed:

_____
                Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 **Marco Lucius Vranish, the natural father of Chase Matthew Vranish, appeals from the Findings of Fact, Conclusions of Law, and Court Ordered Parenting Plan entered by the District Court for the Fifth Judicial District in Beaverhead County, which modified a temporary parenting plan by changing primary physical custody of Chase from Marco to the child's natural mother, Kiane Kym Lisle. We affirm the order of the District Court.**

¶3 The sole issue on appeal is whether the District Court erred when it modified the parenting plan of Chase Vranish and transferred primary physical custody from the child's father, Marco, to the child's mother, Kiane.

FACTUAL AND PROCEDURAL BACKGROUND

¶4 Marco Lucius Vranish and Kiane Kym Lisle are the natural parents of Chase Matthew Vranish, born March 3, 1995, in Dillon, Montana. The couple resided together in Dillon at the time of Chase's birth and continued to live together until their separation in the fall of 1997. During the first two to three years of Chase's life, Marco worked outside the home and provided financial

2

support while Kiane primarily cared for Chase. Upon their separation, Kiane moved to Bozeman, Montana, to attend Montana State University. Marco continued to work and reside in Dillon.

¶5 Both Marco and Kiane sought primary custody of Chase and on January 23, 1998, a custody hearing was held. On January 27, 1998, the District Court issued a temporary custody award which gave primary custody of Chase to Marco. The District Court found that it was in Chase's best interest to reside primarily with Marco given the stability of Marco's lifestyle. At the time of the hearing, Kiane was living in a dormitory at Montana State University and her future plans were uncertain. On the other hand, Marco lived in the same two-bedroom house where he and Kiane had resided during their relationship and was employed in a job he had worked at for several years.

¶6 Following the award of primary custody to Marco, Marco and Chase lived alone in Dillon for about nine months. Then Marco married. In May of 2000, Marco, his wife and Chase moved from Dillon to Nampa, Idaho. The move was precipitated by a work-related injury which forced Marco to pursue job retraining. Marco decided he wanted to attend a computer networking program at a college in Boise, Idaho.

¶7 Shortly after arriving in Idaho, Marco, his wife and Chase moved from Nampa to Boise. Marco and his wife separated after seventeen months, and divorced two months later. At that point, Marco and Chase moved into the same apartment building in Boise as Marco's mother (Chase's grandmother). Soon thereafter, Marco,

3

Marco's mother, and Chase moved into a house which is where they continue to reside.

¶8   Marco continued to attend classes in Boise at the time of his appeal.  His class schedule varies depending on the semester, and he usually does not attend class in the summer.  Marco hopes to graduate with an associate's degree in June of 2002 and find employment in either Boise or elsewhere upon graduation.

¶9   Since Marco's move to Idaho, Kiane's ability to visit Chase has been limited by the geographic distance between the two parents.  Although Kiane was awarded custody for three weekends per month pursuant to the 1998 temporary order, she was ordinarily able to see Chase only one weekend per month.  In several months she was unable to see Chase at all.  At no time since Marco's move to Idaho has Kiane been able to exercise the parenting time she was awarded by the 1998 temporary order.

¶10  For the past three years, Kiane has been employed on a full-time basis with the Montana Department of Transportation.  She usually works regular hours during the winter and, in the summer, works longer hours but on a more inconsistent basis.  Kiane has lived in Butte during that period, where she owns a two-bedroom house near a local elementary school.

¶11  On September 8, 2000, Kiane filed a motion to modify the parenting plan, and requested that she be designated as the primary residential parent.  A hearing was held on Kiane's motion on May 31, 2001.  On June 12, 2001, the District Court modified its previous temporary parenting plan, and designated Kiane the primary

4

parent. As adopted by the District Court, the parenting plan designated Kiane as the primary custodial parent during the winter months, and granted Marco parenting time every other weekend during the school year, for all but two weeks during the summer, and on alternating holidays. On June 14, 2001, the District Court issued its final judgment with findings of fact and conclusions of law in support of its decision. It is from that final judgment that Marco appealed on July 20, 2001.

## STANDARD OF REVIEW

¶12 We review a district court's findings of fact relating to custody modification to determine whether those findings are clearly erroneous. *In re Marriage of McClain* (1993), 257 Mont. 371, 374, 849 P.2d 194, 196. Findings are clearly erroneous if they are not supported by substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces it that a mistake has been made. *McClain*, 257 Mont. at 374, 849 P.2d at 196. If the findings upon which a decision is predicated are not clearly erroneous, we will reverse the district court's decision to modify custody only where an abuse of discretion is clearly demonstrated. *In re Paternity and Custody of A.D.V.*, 2001 MT 74, ¶ 8, 305 Mont. 62, ¶ 8, 22 P.3d 1124, ¶ 8.

¶13 The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *In re Marriage of Syverson* (1997), 281 Mont. 1, 15-16, 931 P.2d 691, 700.

## DISCUSSION

5

¶14 The sole issue on appeal is whether the District Court erred when it modified the parenting plan of Chase Vranish and transferred primary physical custody from the child's father, Marco, to the child's mother, Kiane.

¶15 Marco contends that the District Court's decision to modify Chase's parenting plan was based on clearly erroneous findings of fact and incorrect conclusions of law.

*A. Findings of Fact*

¶16 With respect to the findings of fact, Marco challenges Findings of Fact Nos. 2, 4, and 10. Finding of Fact No. 2 provides:

> During the first two or three years of the child's life the dominant portion of care for him was provided by Mother. From three years of age until approximately six years of age the dominant portion of care for him was provided by Father.

Marco alleges that both parties provided for Chase's care during the first two or three years of his life when the parties resided together in Dillon. Furthermore, Marco contends that the Court's finding that the parents each have provided dominant care of Chase half the time had a substantial impact on the District Court's decision.

¶17 First, we conclude that the District Court's finding is supported by substantial evidence and was not clearly erroneous. In fact, Marco testified as follows:

> Q: Okay. Marco, Kiane testified that during the first three years of Chase's life that she almost exclusively raised him. Is that correct?
>
> A: For the most part, yes.

¶18 Second, consistent with the Legislature's repeal of the presumption that custody should be awarded to the parent who has provided most of the child's primary care (see § 40-4-212(3)(b), MCA (1995)), it does not appear that Finding of Fact No. 2, when read in the context of the Court's entire decision, was a primary reason for its decision.

¶19 Marco next challenges Finding of Fact No. 4, which provides:

> Now the situation is reversed. Father is in school. He will graduate in June 2002. His future occupation and location are uncertain. There are changes in his school class schedule from time to time. Since the time of the temporary order, Father has lived singly, married, singly, and now single with the addition of the child's grandmother in his home. In contrast, Mother now has steady and permanent full-time employment. She has a certain fixed long term residence.

Marco alleges that the Court's finding that Kiane's situation and residence are permanent and that Marco's situation and future are uncertain is clearly erroneous. However, substantial evidence again supports the District Court's finding. As stated by the District Court, the situation has basically reversed. Although Marco may have more time to spend with Chase because of the flexibility in his class schedule, his future is uncertain. On the other hand, Kiane's career and living situation have both stabilized. We conclude that Finding of Fact No. 4 is not clearly erroneous.

¶20 Finding of Fact No. 10 provides, "There will be no harm to the child in making a change. He is not yet in an academic portion of his school." Marco contends there were no facts adduced at the hearing to show that there would be no harm to Chase as a result of

7

changing his primary custodial parent. Marco contends that because the law favors continuity and stability in care, a change in schools is not the only factor to consider when determining whether harm will result to the child from a change in custody.

¶21 While Marco is correct, we interpret the District Court's finding as an honest effort to balance all relevant parenting factors and determine what was in the best interests of Chase, as required by § 40-4-212, MCA. We interpret Finding of Fact No. 10 as simply the District Court's recognition of Chase's current educational situation to the extent that it was a factor. The Court's reasoning is consistent with its responsibility to determine the best interests of the child. The finding that no harm would occur, in this case, needs to be considered in the context of all the District Court's findings. Here, the District Court was addressing how a change in the parenting plan may impact Chase's education. We find no error in the District Court's finding.

*B. Conclusions of Law*

¶22 Marco challenges Conclusions of Law Nos. 7, 8, and 9. Conclusion of Law No. 7 provides:

> Where the child can thrive with either parent and where Father has had the benefit of principal residential time with the child, an additional minor consideration is that equity will be served by allowing Mother an opportunity to have principal residential time with the child.

Marco contends that the District Court incorrectly considered the parents' interests in its determination, and, in turn, failed to

8

properly consider the changed circumstances and best interests of the *child*, as required in § 40-4-212, MCA, and § 40-4-219, MCA.

¶23 In response, Kiane contends that Conclusion of Law No. 7 needs to be read in relationship to the District Court's Findings of Fact Nos. 3 through 7, as well as Conclusions of Law Nos. 1 through 4, which address the change of circumstances and best interests of Chase.

¶24 We agree that the appropriate inquiry is the best interests of Chase – not his parents, and that those interests are to be determined based on the criteria set forth at § 40-4-212, MCA, and § 40-4-219, MCA. However, we also agree that the Findings of Fact and Conclusions of Law cited by Kiane address the appropriate statutory criteria. Therefore, the Court's conclusion that "an additional minor consideration is that equity will be served by allowing Mother an opportunity to have principal residential time with the child," is superfluous and was not the primary basis for its decision.

¶25 Marco next contends that Conclusion of Law No. 8 was incorrect. Conclusion of Law No. 8 provides, "Not all of the factors enumerated are of equal weight. However, all of them suggest the same conclusion, that Mother should have parenting opportunities which have been unavailable to her." Marco contends that Conclusion of Law No. 8 incorrectly considers the best interests of Kiane, not the best interests of Chase.

¶26 However, as discussed above, Conclusion of Law No. 8 follows the findings of fact and several other conclusions of law which

9

directly address the statutory criteria dealing with the best interests of the child. Furthermore, it is more in the nature of an observation than a conclusion of law and does not appear to have been the basis for the District Court's decision. We, therefore, conclude that it does not provide a reason to set aside the District Court's decision.

¶27 Marco also challenges Conclusion of Law No. 9, which provides, "There will be no harm to the child in making a change. He is not yet in an academic portion of his school. He can thrive with either parent." While, again, this is incorrectly identified as a conclusion of law, Marco contends that there was no evidence to support it. According to Marco, without expert testimony, the District Court could not have found that living with Kiane would not affect him academically. However, neither party introduced any evidence regarding the effect of attending a different school in the first grade than the one attended during kindergarten. Therefore, the District Court's inference was probably drawn from the lack of any contention to the contrary. Regardless of the observation denominated in Conclusion of Law No. 9, the District Court's finding that the best interests of Chase are served by modifying the parenting plan to give primary custody to Kiane was supported by substantial evidence and was not clearly erroneous.

¶28 As a final issue, Marco contends that the District Court failed to consider several other factors listed in § 40-4-212, MCA. Specifically, Marco contends that the District Court ignored the close and stable relationship between Chase and his grandmother,

10

the adjustments Chase had made to his home, school and community in Idaho, the fact that Marco had been Chase's primary caretaker for the previous three years, that any interruption in their relationship would detrimentally effect the continuity and stability of Chase's care, and that under the 1998 temporary order, both parents had continuing and frequent contact with Chase.

¶29 Although some relevant factors may not have been expressly set forth in the District Court's decision, after careful review of the order we disagree that the relevant factors were not considered. Based on the temporary nature of the original order and Marco's move to Idaho, the District Court had a right to examine Kiane's request to modify the parenting order and determine the best interests of the child. The District Court considered (1) the changes that had occurred since the 1998 temporary order, (2) the comparative living situations of both Marco and Kiane, and (3) the prospects for future stability.

¶30 We conclude that the District Court's findings were not clearly erroneous and that it correctly applied the law to its decision.

¶31 For these reasons, we affirm the order of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART

11