No. 79-64

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

IN RE THE MARRIAGE OF

DENNIS MICHAEL BILLINGS,

                    Petitioner and Respondent,

        vs.

LEONA PENELOPE BILLINGS (UNDERWOOD),

                    Respondent and Appellant.

---

Appeal from:  District Court of the Fourth Judicial District,
              Honorable Jack L. Green, Judge presiding.
              In and for the County of Missoula.

Counsel of Record:

    For Appellant:

        Williams and Sverdrup, Libby, Montana

    For Respondent:

        Datsopoulos, MacDonald & Lind, Missoula, Montana

---

                          Submitted on briefs: April 3, 1980

                                    Decided: SEP 9 1980

Filed: SEP 9 1980

_____
            Thomas J. Kearney
                                    Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Leona Penelope Billings appeals from an order of the Missoula County District Court which denied her motion to change venue from Missoula to Lincoln County in relation to a custody dispute arising out of a marriage which was dissolved in Missoula County in 1973. We affirm.

The marriage of this couple was dissolved in 1973 in Missoula County District Court and the wife received custody of the two children and the husband was ordered to pay $100 per month for child support. This is the third petition filed by the father to modify provisions of the divorce decree. In 1975 the father sought to modify the property distribution decree and to reduce child support payments. The parties resolved this dispute by stipulation. In March 1977 the husband again petitioned to modify visitation rights. The mother filed a counterpetition which sought also to modify the visitation rights and to compel the father to pay an arrearage in child support. This dispute was again resolved by stipulation.

On September 13, 1979, the father filed a third petition in Missoula County District Court, this time seeking custody of the parties' minor son. The mother responded by filing a consolidated motion for change of venue, to dismiss, to strike, and for a more definite statement. She wanted the venue changed to Lincoln County where she had been living the past several years (which included the times within which the previous petitions were filed and settled in Missoula County). The trial court denied the mother's request for a change of venue and the mother's appeal followed.

The wife's reliance on Ronchetto v. Ronchetto (1977), 173 Mont. 285, 567 P.2d 456, as authority for a change of

-2-

venue here, has absolutely no merit. In _Ronchetto_, the couple was divorced in Nevada and later both moved to Butte, Montana. The father, mother, and child were residents of Silver Bow County when the petition was filed to modify the Nevada custody decree.

The mother next argues that she has an absolute right to a change of venue based on section 25-2-108, MCA, which is the general venue statute. The statute provides that actions "shall be tried in the county in which the defendants . . . may reside at the _commencement_ of the action." (Emphasis added.) The mother argues that the father's petition to modify the custody decree is the commencement of a new action, and therefore that she is entitled to have the venue changed to Lincoln County, her place of residence. Before the Uniform Marriage and Divorce Act, it was the law that the trial court has continuing jurisdiction in matters of child custody. Libra v. Libra (1969), 154 Mont. 222, 462 P.2d 178; Butler v. Brownlee (1969), 152 Mont. 453, 451 P.2d 836; and Barbour v. Barbour (1958), 134 Mont. 317, 330 P.2d 1093. Furthermore, the enactment of the Uniform Marriage and Divorce Act did not change this fundamental concept. Gianotti v. McCracken (1977), 174 Mont. 209, 569 P.2d 929; Foss v. Leifer (1976), 170 Mont. 97, 550 P.2d 1309.

This is a frivolous appeal. Its only apparent purpose is to delay an ultimate hearing on the merits in relation to the father's petition to modify the custody provisions of the divorce decree.

We condemn the use of the adversary system and the appellate process for bringing needless litigation or in frustrating the right of an opposing party to a timely hearing on the merits of his case. In Weinheimer v. Scott (1964), 143 Mont. 243, 388 P.2d 790, this Court, pursuant to its

-3-

authority under Rule 32, M.R.App.Civ.P., assessed $500
in damages against the plaintiffs' lawyer who admitted during
oral arguments that he was responsible for the delays involved
in the case, and for bringing the proceedings which slowed
the ultimate resolution of the case.

The problem we are faced with here is that we do not
know who is responsible for bringing the appeal. Did the
client insist on appealing the order denying the motion for
a change of venue, or did the lawyer advise the client that
considerable delay could be accomplished by appealing the
order denying her motion for a change of venue? We cannot
ignore the fact that the client may have little or no means
to pay an assessment of damages for undertaking a frivolous
appeal.

In Alaska Pacific Assur./& Raines v. L. H. & C., Inc.
& Hartman, Cause No. 79-103, Decided 9/10/80, we ordered the
insurance company to pay $500 in damages because its appeal
was frivolous. It was clear under those facts that the insur-
ance company, client, and counsel for the insurance company
knew or should have known that it had commenced a frivolous
proceedings before the Workers' Compensation Court and had
taken a frivolous appeal from the order of that court. The
$500 could just as easily have been assessed against the
lawyers representing the insurance company, for we cannot
ignore the influence which lawyers have on their clients in
reaching a decision to appeal. It is rarely a unilateral
decision of the client taken without the advice of counsel.

This Court is being flooded with appeals involving
property distribution and child custody. We remind the legal
profession that the speedy and fair resolution of these problems
must be uppermost in their minds. This is an area of law

where the adversary system does not lend itself too well to this objective. A little creativity and a little cooperation by lawyers practicing in this area can do much to help the trial courts reach speedy and equitable decisions, and do much to aid and speed up the decision-making processes of this Court should an appeal be undertaken. The taking of frivolous appeals does not lend itself to that goal. Should this practice continue, we will be compelled to increasingly invoke the sanctions permitted by Rule 32. We hope that the legal profession will keep these admonitions in mind.

The order denying the mother's motion for a change of venue to litigate the child custody dispute is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-5-