No. 01-151

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 230

IN RE MARRIAGE OF

SCOTT TOAVS,

Petitioner and Respondent,

and

KIMBERLY TOAVS,

Respondent and Appellant.

APPEAL FROM:    District Court of the Fifteenth Judicial District,
In and for the County of Roosevelt,
The Honorable David Cybulski, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

David E. Stufft, Kalispell, Montana

For Respondent:

Laura Christoffersen, Christoffersen & Knierim, Culbertson, Montana

Submitted on Briefs: July 26, 2001

Decided: October 10, 2002

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Kimberly Toavs appeals an order of the District Court for the Fifteenth Judicial District, Roosevelt County, denying her Motion for Substitution of District Judge and an order granting Scott Toavs' Motion to Amend Parenting Plan. We affirm in part and vacate part of the District Court's order.

¶2 We address the following issues on appeal:

¶3 1. Whether the District Court erred in refusing to honor Kimberly's motion for substitution under § 3-1-804, MCA.

¶4 2. Whether the District Court erred in modifying the parties' parenting plan.

**Factual and Procedural Background**

¶5 Kimberly and Scott were married on February 7, 1997. They have one child, Victoria, born on February 5, 1999. During their marriage, Kimberly and Scott resided in Wolf Point, Montana, on Scott's family's farm. Scott farms and ranches with his parents and he operates a portable welding service.

¶6 The parties separated on May 4, 1999, and Scott filed a petition for dissolution of the parties' marriage the following week. The District Court entered its Findings of Fact, Conclusions of Law and Decree of Dissolution of Marriage on April 4, 2000. Prior to the dissolution of their marriage, Kimberly and Scott entered into a Property Settlement Agreement and a Final Parenting Plan, both of which were incorporated into the decree of dissolution. The parenting plan provided that Kimberly and Scott were to have joint custody

2

of Victoria and that Kimberly would be the custodial parent. Scott was to have escalating visitation beginning with visitation every other weekend. The parenting plan also provided that "[w]hen [Victoria] reaches age 2, the parties will negotiate a new parenting plan."

¶7 After the parties separated in May 1999, Kimberly moved to Kalispell with Victoria to live with Kimberly's mother. Kimberly and Victoria used the lower level of Kimberly's mother's home for their living needs. The lower level consisted of a living room, bedroom, bathroom and laundry room.

¶8 In January 2000, Kimberly moved with Victoria to Missoula so that Kimberly could attend the University of Montana in the hopes of completing her teaching degree. While in Missoula, they lived in a home owned by Kimberly's aunt. Kimberly and Victoria would return to Kalispell most weekends, particularly on the weekends that Scott had visitation. After completing the spring semester, Kimberly and Victoria returned to Kalispell for the summer. Kimberly subsequently discovered that the University of Great Falls offered a teaching degree through the Flathead Valley Community College in Kalispell, so Kimberly decided to continue her schooling in Kalispell rather than returning to Missoula.

¶9 Because Victoria was still an infant and Kimberly was breast feeding her, Scott's visitation was usually conducted at Kimberly's residence in Kalispell. Thus, Scott traveled to Kalispell from Wolf Point twice each month to visit Victoria until September 2000, when Victoria was old enough to travel to Wolf Point with Scott. At that time, Victoria began staying with Scott in Wolf Point for one week each month.

¶10 On December 5, 2000, Scott, dissatisfied with the visitation arrangement, filed a

Motion to Amend the Parenting Plan. In his affidavit supporting the motion, Scott requested that custody of Victoria be shared on a monthly basis until Victoria reaches school age. Kimberly filed a motion for substitution of the District Judge on December 15, 2000, pursuant to § 3-1-804, MCA, but the District Court denied Kimberly's motion on the grounds that the motion was untimely.

¶11 On January 16, 2001, the District Court held an evidentiary hearing on Scott's motion to amend. At the hearing, Scott complained that the present system of visitation was not working out because Kimberly often times refused his requests for visitation. He further testified that visitation should be on an equal basis until Victoria reaches school age. Kimberly responded that she had good reasons for refusing visitation on the two occasions that refusal occurred. She testified that she and her fiancé had a child in December 2000, and she felt it was important for Victoria to be there when her baby brother was born rather than in Wolf Point with Scott. Kimberly also testified that on one of the planned visitation dates after the baby was born, a blizzard made traveling hazardous and she did not want Victoria traveling in a car under those conditions. Nevertheless, both Kimberly and Scott testified at the hearing that the other party is a fit parent and capable of taking care of Victoria.

¶12 The District Court entered its Findings of Fact, Conclusions of Law and Order on January 31, 2001. In its order, the court determined that it was in Victoria's best interests that her custody be shared between Kimberly and Scott as equally as possible. Hence, the court modified the parties' parenting plan to provide that Scott would have primary residential custody of Victoria during the months of January, March, May, July, September and

4

November each year and Kimberly would have primary residential custody of Victoria during all other months. The court also set out a visitation schedule for holidays. In addition, the court determined that this arrangement would continue until Victoria reaches school age and at that time, Scott would have primary residential custody of Victoria during the school year and Kimberly would have primary residential custody during the summer months with alternating visitation for holidays.

¶13 Kimberly timely appealed the District Court's order modifying the parenting plan. She also moved to have the District Court's judgment stayed pending appeal, but the District Court denied her motion.

## Issue 1.

¶14 *Whether the District Court erred in refusing to honor Kimberly's motion for substitution under § 3-1-804, MCA.*

¶15 Whether a motion to substitute a district court judge is timely pursuant to § 3-1-804(1)(c), MCA, presents a question of law. *Mattson v. Montana Power Co.*, 2002 MT 113, ¶ 7, 309 Mont. 506, ¶ 7, 48 P.3d 34, ¶ 7 (citing *In re Marriage of Archibald*, 1999 MT 258, ¶ 4, 297 Mont. 20, ¶ 4, 993 P.2d 653, ¶ 4). We review a district court's conclusions of law to determine whether they are correct. *Mattson*, ¶ 7 (citing *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686).

¶16 Kimberly argues on appeal that Scott "initiated this new proceeding" on December 5, 2000, when he filed his Motion to Amend the Parenting Plan, thus, under § 3-1-804(1)(c), MCA, Kimberly had ten days from that date to file for substitution of the Honorable David

5

Cybulski, District Court Judge, which she did. Consequently, Kimberly contends that Judge Cybulski erred in concluding that Kimberly's motion for substitution was untimely and that after she filed her motion for substitution on December 15, 2000, Judge Cybulski did not have jurisdiction to preside over this case. Scott argues, on the other hand, that a District Court Judge has continuing jurisdiction in family law cases, thus, a motion for modification of custody is not the commencement of a new action which would entitle either party to substitute judges.

¶17    Section 3-1-804, MCA, sets forth both the procedure and the time frame for substituting a District Court Judge. This statute provides, in pertinent part:

> 1. A motion for substitution of a district judge may be made by any party to a proceeding only in the manner set forth herein. In a civil or criminal case, each adverse party, including the state, is entitled to one substitution of a district judge.
>
> (a) . . . After a timely motion has been filed, the substituted judge shall have no power to act on the merits of the cause or to decide legal issues therein, and shall call in another judge. . . .
>     . . . .
> (c)  When a judge is assigned to a cause for 30 consecutive days after service of a summons, or 10 consecutive days after service of an order to show cause, information or other initiating document, and no motion for substitution of judge has been filed within said time period, the plaintiff or the party filing the order, information or other initiating document, and the party upon whom service has been made shall no longer have a right of substitution. . . .
>     . . . .
> (e)  Any motion for substitution which is not timely filed is void for all purposes. The judge for whom substitution is sought shall have jurisdiction to determine timeliness, and if the motion for substitution is untimely, shall make an order declaring the motion void.

Section 3-1-804, MCA.

¶18    Kimberly does not present any authority in support of her argument that a motion to

6

amend a parenting plan is an "initiating document" thereby allowing her 10 days to file for substitution of Judge Cybulski under § 3-1-804(1)(c), MCA. Nonetheless and contrary to Kimberly's assertions, a motion to modify custody is not the commencement of a new proceeding and cannot result in the vesting of a new right to substitute the District Court Judge.

¶19    This Court briefly discussed this question in the context of a motion to change venue. In *Billings v. Billings* (1980), 189 Mont. 520, 522, 616 P.2d 1104, 1105, the mother argued that the father's petition to modify the custody decree was the commencement of a new action entitling her to have the venue changed to her place of residence under the general venue statute providing that actions shall be tried in the county in which the defendants may reside at the commencement of the action. In *Billings,* we affirmed the District Court's denial of the mother's motion for change of venue noting that this Court has long held that the trial court has continuing jurisdiction in matters of child custody. *Billings*, 189 Mont. at 522, 616 P.2d at 1105 (citing *Gianotti v. McCracken* (1977), 174 Mont. 209, 569 P.2d 929; *Foss v. Leifer* (1976), 170 Mont. 97, 550 P.2d 1309; *Libra v. Libra* (1969), 154 Mont. 222, 462 P.2d 178; *Butler v. Brownlee* (1969), 152 Mont. 453, 451 P.2d 836; *Barbour v. Barbour* (1958), 134 Mont. 317, 330 P.2d 1093).

¶20    In the case *sub judice*, Judge Cybulski had been assigned to the case since May 10, 1999, more than 19 months prior to Kimberly's motion for substitution. As Scott points out in his brief on appeal, ruling that a party has a right to substitution upon the filing of a motion to modify custody would allow the parties in a dissolution action to "judge shop" and would

7

result in multiple judges being involved in a single custody situation. Simply put, after jurisdiction attaches in a custody dispute, it is important that jurisdiction be retained to ensure continuity, stability and the best interests of the child. *See In re Marriage of Skillen*, 1998 MT 43, ¶¶ 24-26, 287 Mont. 399, ¶¶ 24-26, 956 P.2d 1, ¶¶ 24-26.

¶21 Accordingly, we hold that the District Court did not err in refusing to honor Kimberly's motion for substitution under § 3-1-804, MCA.

**Issue 2.**

¶22 *Whether the District Court erred in modifying the parties' parenting plan.*

¶23 We review a district court's findings of fact relating to custody modification to determine whether those findings are clearly erroneous. *In re Marriage of McClain* (1993), 257 Mont. 371, 374, 849 P.2d 194, 196. Findings are clearly erroneous if they are not supported by substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces it that a mistake has been made. *McClain*, 257 Mont. at 374, 849 P.2d at 196. If the findings upon which a decision is predicated are not clearly erroneous, we will reverse the district court's decision to modify custody only where an abuse of discretion is clearly demonstrated. *In re Paternity and Custody of A.D.V.*, 2001 MT 74, ¶ 8, 305 Mont. 62, ¶ 8, 22 P.3d 1124, ¶ 8. The test for an abuse of discretion is whether the district court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *In re Marriage of Meeks* (1996), 276 Mont. 237, 242, 915 P.2d 831, 834 (citations omitted). Our review as to questions of law is plenary. *In re Custody of D.M.G.*, 1998 MT 1, ¶ 10, 287 Mont. 120, ¶ 10,

951 P.2d 1377, ¶ 10 (citing *In re Marriage of Syverson* (1997), 281 Mont. 1, 15-16, 931 P.2d 691, 700).

¶24    Kimberly argues that this case should be remanded for a new evidentiary hearing because the record does not support the finding that Kimberly should be removed as the custodial parent. However, the parties' parenting plan provided that the plan should be modified when Victoria reached the age of two and this Court has held that where there are two fit parents, as in this case, the time should be allocated as equally as possible. *See In re Marriage of Susen* (1990), 242 Mont. 10, 13, 788 P.2d 332, 334.

¶25    Accordingly, we hold that the District Court did not err in modifying the parenting plan to divide custody equally between the parents until Victoria reaches school age.

¶26    Kimberly also argues that the District Court overstepped its authority in granting Scott primary residential custody when Victoria reaches school age because Scott did not request that relief in his Motion to Amend the Parenting Plan. We agree. In *In re Marriage of Haney* (1994), 267 Mont. 107, 110, 882 P.2d 497, 499, we stated:

> Under Rule 54(c), M.R.Civ.P., "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." While that gives a broad discretion to the trial court, the discretion under Rule 54(c) must be viewed in light of the nature of the case. *In re Marriage of Hughes* (1989), 236 Mont. 427, 430, 770 P.2d 499, 501. *A district court may not grant relief not requested when the facts and issues necessary to support such relief have not been tried and proven at trial. Matter of George Trust* (1992), 253 Mont. 341, 345, 834 P.2d 1378, 1381. [Emphasis added.]

¶27    Here, there was no testimony regarding which parent would be more suitable as the primary residential custodian during Victoria's school years, thus the "facts and issues

9

necessary to support such relief have not been tried and proven at trial" and the District Court was without authority to grant such relief. *Haney*, 267 Mont. at 110, 882 P.2d at 499; *George Trust*, 253 Mont. at 345, 834 P.2d at 1381.

¶28 Accordingly, we vacate that portion of the District Court's order pertaining to custody of Victoria when she reaches school age.

¶29 Affirmed in part and vacated in part.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM REGNIER