FILED

December 23 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0128

DA 14-0128

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 333

IN RE THE MARRIAGE OF
TONIA J. MAREZ,

      Petitioner and Appellant,

  and

DAVID B. MARSHALL,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
                  In and For the County of Musselshell, Cause No. DR 03-13
                  Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Tonia J. Marez, Self-Represented, Billings, Montana

      For Appellee:

            Michelle R. Lee, Harper & Lee Law Firm, Billings, Montana

                             Submitted on Briefs:  October 22, 2014
                                  Decided:  December 23, 2014

Filed:

                                          Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Tonia J. Marez and David B. Marshall have been involved in an acrimonious dispute over the parenting of their minor daughter, A.C.M., since the dissolution of their marriage in 2003. In August 2013, David, represented by counsel, filed a motion in the Fourteenth Judicial District Court, Musselshell County, seeking to hold Tonia in contempt for failure to abide by the parenting plan. Tonia, pro se, moved to hold David in contempt for failure to pay child support. David also moved to sanction Tonia for filing numerous pleadings with the intent to harass David. The District Court granted David's motion for contempt, denied Tonia's motion for contempt, and imposed sanctions against Tonia. Tonia appeals. We affirm.

¶2 Tonia presents the following issues for review:

1. *Did the District Court err when it granted David's motion to hold Tonia in contempt for failure to abide by the parenting plan?*

2. *Did the District Court err when it denied Tonia's motion to hold David in contempt for failure to pay child support?*

3. *Did the District Court err when it imposed sanctions against Tonia?*

## BACKGROUND

¶3 Tonia and David were married in 1997. Tonia had a daughter, B.J.M., from a previous marriage. A.C.M., born in 1999, was the only child of the marriage. During the marriage, David received monthly benefits from the Department of Veteran's Affairs, including $186.00 per month designated for the support of Tonia and B.J.M. Tonia and David separated in April 2003. On September 9, 2003, the parties filed a stipulation regarding support. They agreed that David should pay child support for A.C.M. in the

amount of $481.00 monthly and that the $186.00 benefit designated for Tonia and B.J.M. should be paid to Tonia. The District Court entered an order adopting the stipulation of the parties. That order specified that David's VA benefits included "$186.00 per month for the support and care of the Petitioner and her daughter [B.J.M.]," and directed David to pay the benefit to Tonia until such time as it was discontinued.

¶4    On September 15, 2003, for reasons which are not clear from a review of the record, a second order on support was entered. That order also adopted the stipulation of the parties and directed David to pay child support of $481.00 monthly. The language of this order differed slightly from the September 9 order, as it stated that David "receives $186.00 per month from the VA for the support of Petitioner *and children*," (emphasis added) rather than specifically for the support of B.J.M. David notified the VA that Tonia and B.J.M. were no longer living in the family home, and the VA terminated the benefit as of September 1, 2003.

¶5    The marriage was dissolved by decree November 28, 2003. In the decree of dissolution, the District Court ordered David to pay Tonia $1,020.00, representing the amount of VA benefits David had received for the support of Tonia and B.J.M. prior to September 1, 2003. The District Court also directed the parties to submit their proposed child support calculations within 30 days of entry of the decree of dissolution. On December 23, 2003, the parties entered another stipulation, agreeing that child support for A.C.M. should be set at $494.00 per month. This stipulation was subsequently adopted by the District Court.

3

¶6    The final parenting plan, issued November 28, 2003, and incorporated into the decree of dissolution, provided that A.C.M.'s primary residence would be with Tonia. David was granted visitation on alternate weekends and for a total of four weeks during the summer. Exchanges were to take place at a public location. The parenting plan included notice that failure to abide by its provisions could subject the violating party to sanctions, including contempt.

¶7    Relations between the parties remained antagonistic after dissolution of the marriage. Nearly 200 additional documents were filed in the District Court after entry of the decree of dissolution and final parenting plan. In the numerous filings that followed, each parent alleged neglect, abuse, or manipulation of A.C.M. by the other parent. Each requested amendment of the parenting plan to require supervision of the other parent's visitation. Tonia petitioned for orders of protection on behalf of herself, A.C.M., and other household members.

¶8    This appeal is immediately concerned with filings made in 2013, after A.C.M. reached the age of 14. On April 23, 2013, Tonia petitioned the Yellowstone County Justice Court for an order of protection on behalf of A.C.M. A typed statement bearing A.C.M's signature was attached and stated that A.C.M. was afraid of David because he slept during her visits, did not provide acceptable food, emotionally manipulated her, and tried to take her away from her mother. Tonia also included her own statement alleging that David had a long history of domestic violence. The Yellowstone County Justice Court granted a temporary order of protection. David moved to have the action removed to the Musselshell County District Court. The Yellowstone County Justice Court granted

4

the motion, due to the ongoing parenting action in the Musselshell County District Court. After the removal, David moved the Musselshell County District Court to vacate the order of protection.

¶9 On May 7, 2013, David filed an affidavit in support of his motion to vacate the order of protection. In the affidavit, David alleged that prior to A.C.M.'s 14th birthday, Tonia contacted him and informed him that the parenting plan needed to be amended now that A.C.M. was old enough to "have a say." He said that Tonia appeared at a scheduled visitation exchange on April 19, 2013, without A.C.M. Tonia allegedly informed David that A.C.M. no longer wanted to have contact with him, she would no longer be bringing A.C.M. to the exchanges, and David had no choice but to accept the circumstances. David said he had not had contact with his daughter since April 19, 2013.

¶10 On May 9, 2013, Tonia filed a response to David's motion to vacate the order of protection. Attached to the response were affidavits by Tonia, A.C.M., Tonia's husband Silvester Marez, and Jennah Ritz, a family friend. Tonia stated in her affidavit that A.C.M. did not want anything to do with David. She said she had tried unsuccessfully to help David repair his relationship with A.C.M. Tonia said A.C.M. behaved differently around David and was scared of him. Tonia was concerned that because David would not allow A.C.M. to participate in extracurricular sports, he may not allow her to have an after-school job, in which case Tonia feared A.C.M. would "turn to a life of crime." Tonia was also upset by David's references to A.C.M. as "HIS" daughter, rather than "OUR DAUGHTER." Tonia claimed David had spoken to A.C.M. on the phone on April 21, 2013.

¶11    A.C.M. stated in her affidavit that her mother "has mostly given me the choice" whether she wanted to see her father, whom she called Dave. She said she did not want any contact with her father because "[h]e will just keep talking about the Court things." Silvester stated that A.C.M. "made her choice to stop seeing Dave." Ritz stated that on April 19, 2013, A.C.M. "did not want to go with Dave." Ritz said she accompanied Tonia to the exchange location. Ritz said Tonia pulled up next to David's truck, rolled down her window, and told David that A.C.M. was very upset and did not want to see him. Ritz said that Tonia "always gives A.C.M. the choice whether she wants to go [visit David] or not. . . . [Tonia] always tells A.C.M. that she can do whatever she wants to do." On May 13, 2013, the District Court dissolved the order of protection, concluding that the petition appeared to be "nothing more than a poorly veiled attempt to amend the final parenting plan . . . ." The District Court ordered the parties to comply with the final parenting plan.

¶12    On June 7, 2013, Tonia filed a motion to temporarily suspend David's visitation schedule. Attached was another affidavit by A.C.M., stating that she knew a parenting plan was in place, she was refusing to attend scheduled visits with her father, and she believed neither parent could force her to do so because she was 14 years old. The District Court denied the motion, and again affirmed that the final parenting plan remained in effect.

¶13    On August 13, 2013, David moved to hold Tonia in contempt for failure to comply with the final parenting plan. David attached an affidavit stating that he had not seen A.C.M. since April 7, 2013, and had not spoken to her on the phone since April 19, 2013.

6

David noted that on May 23, 2013, Silvester had filed a petition for stepparent adoption of A.C.M. in the Yellowstone County District Court, to which David "vehemently objected." David stated that despite the two recent orders of the Musselshell County District Court reaffirming the final parenting plan, Tonia refused to allow him any visitation or telephone contact with A.C.M.

¶14    Tonia responded to the motion for contempt on August 27, 2013, stating that A.C.M. had employment and social obligations which conflicted with David's scheduled visitation. She also claimed forcing A.C.M. to attend visitation with David would violate A.C.M.'s constitutional rights and require Tonia to commit child abuse. David replied on September 9, 2013. His reply indicates that following his objection to Silvester's petition for stepparent adoption, Silvester also filed a petition to terminate David's parental rights. The reply also indicates that the adoption and parental termination pending in the Yellowstone County District Court had been transferred to the Musselshell County District Court.

¶15    Tonia then filed a flurry of documents. On September 10, 2013, she moved to hold David in contempt for allegedly failing to pay VA benefits received for the support of A.C.M. to Tonia, as she claimed he had been ordered to do. Tonia attached the September 15, 2003 interim support order, which referred to benefits received "from the VA for the support of Petitioner and children." Tonia also attached a January 25, 2011 order referring to the September 15, 2003 interim support order, and stating that benefits received "for the support of the Petitioner and the child" were to be paid to Tonia "for so long as the Respondent received such funds."

7

¶16 On September 11, 2013, Tonia filed a second response to David's motion for contempt. She also moved to have the parenting action, the pending stepparent adoption, and the petition for termination of parental rights transferred to the Yellowstone County District Court. On September 23, 2013, the Musselshell County District Court set a show cause hearing on David's motion to hold Tonia in contempt. David did not immediately respond to Tonia's motions for contempt and to transfer the pending actions. On September 27, 2013, Tonia moved the Musselshell County District Court to enter a default judgment granting her motion for contempt. On September 30, 2013, Tonia also asked the Musselshell County District Court to grant her motion to transfer the pending actions by default. She also moved to vacate the show cause hearing on David's motion for contempt. The District Court, observing the "numerous matters pending before this Court, as well as the companion cause DA-13-04," a reference to the pending stepparent adoption and termination of parental rights, ordered a combined hearing on all pending motions.

¶17 On October 3, 2013, David filed his response to Tonia's motion for contempt and motion to transfer the pending actions. He also moved for sanctions against Tonia and Silvester pursuant to M. R. Civ. P. 11(b), alleging that the numerous pleadings filed by Tonia "were not presented for any proper purpose and . . . were filed solely to harass, cause unnecessary delay, and needlessly increase the cost of litigation." David also claimed Silvester's petition for stepparent adoption was "a frivolous [p]etition that is not warranted by existing Montana law," because A.C.M. was not legally available for adoption. David asked the District Court to award him attorney fees and costs.

8

¶18 The hearing on all pending motions was held October 11, 2013. The District Court determined that Yellowstone County was the proper venue for the pending stepparent adoption and termination of parental rights, and ordered the case transferred. The District Court denied Tonia's motion to transfer the parenting action and continued to hear motions in that case. Extensive testimony was then heard.[1]

¶19 On January 28, 2014, the District Court issued its Findings of Fact, Conclusions of Law, and Order on Motions. The District Court found that David's obligation to pay Tonia benefits received for the support of Tonia and B.J.M. ceased as of September 1, 2003, the date those benefits were terminated by the VA. The District Court stated that its references to those benefits in previous orders had unfortunately "caused much confusion," and that it had erroneously included the benefits in the January 25, 2011 order relied upon by Tonia in her motion for contempt. The District Court found that David had never been ordered to pay Tonia any benefits received for the support of A.C.M., and that he had paid in excess of the full amount of child support, $494.00 per month, ordered. The District Court therefore denied Tonia's motion to hold David in contempt for failure to pay child support.

¶20 The District Court interviewed A.C.M. in private, at which time A.C.M. said she did not want to see her father. The court did not find credible, however, Tonia's assertion that she had attempted to persuade A.C.M. to attend visitation with David. The District Court found Tonia had "repeatedly attempted to limit or outright suspend David's visitation rights," citing her actions in obtaining an order of protection in the Yellowstone

---

[1] A transcript of the hearing was not provided to this Court.

9

County Justice Court, supporting Silvester's petition for stepparent adoption and termination of David's parental rights in the Yellowstone County District Court, and moving the Musselshell County District Court to suspend David's visitation schedule. The court found that Tonia was aware of the terms of the final parenting plan, the parenting plan remained in effect, and David had been allowed no contact with A.C.M. since mid-April 2013. The court found that rather than attempting to facilitate visitation, Tonia "seems to acquiesce in A.C.M.'s purported refusal to visit Dave . . . ."

¶21 The District Court characterized the issue of "[w]hether a contempt order is appropriate when a child refuses to attend court[-]ordered visitation with a noncustodial parent because the parent charged with facilitating such visitation has, as the court finds here, either acquiesced in or encouraged the child's refusal to visit" as an issue of first impression in Montana. The District Court concluded that Tonia was in violation of the final parenting plan by submitting to A.C.M.'s desires rather than taking reasonable affirmative steps to abide by the plan and ensure David's visitation. The District Court therefore granted David's motion to hold Tonia in contempt. The court fined Tonia $500.00 and sentenced her to serve 30 days in the Musselshell County Jail. The court suspended the fine and jail time, conditioned upon Tonia delivering A.C.M. to David for his scheduled visitation.

¶22 The District Court also granted David's motion to sanction Tonia pursuant to M. R. Civ. P. 11(b). The District Court found that Tonia had filed "voluminous pleadings" in an attempt to harass David, deprive him of parenting time, cause unnecessary delay, and increase the costs of litigation. The District Court determined

10

Tonia to be a vexatious litigant and required her to obtain leave of court before filing any future pleadings relating to the parenting of A.C.M. The District Court also ordered Tonia to pay David's attorney fees and costs reasonably incurred in pursuing his motions for sanctions and contempt, and in defending against 10 pleadings filed by Tonia in three different courts between April 23, 2013, and September 30, 2013. The District Court directed David's counsel to file an affidavit of fees and costs and serve a copy on Tonia, although no deadline for filing the affidavit was specified. Tonia was allowed 14 days after the filing of the affidavit to object to the amount, in which case a hearing would be held. At the time of this appeal, David's counsel had not yet filed an affidavit of fees and costs.

## STANDARDS OF REVIEW

¶23 A contempt order is ordinarily not subject to appeal. Section 3-1-523(1), MCA. A limited exception exists for contempt orders issued in family law cases, "only when the judgment or order appealed from includes an ancillary order that affects the substantial rights of the parties involved." Section 3-1-523(2), MCA; M. R. App. P. 6(3)(j); *In re Marriage of Lutes*, 2005 MT 242, ¶ 7, 328 Mont. 490, 121 P.3d 561. If a contempt order falls within this exception, we review the order to determine whether the district court acted within its jurisdiction and whether the evidence supports the contempt. *Novak v. Novak*, 2014 MT 62, ¶ 37, 374 Mont. 182, 320 P.3d 459. We will reverse a district court's decision not to find a party in contempt only where there has been a blatant abuse of discretion. *Lutes*, ¶ 7.

11

¶24    *1.  Did the District Court err when it granted David's motion to hold Tonia in contempt for failure to abide by the parenting plan?*

¶25    A contempt order in a family law proceeding is reviewable only if, within a single judgment, the court issues both an order of contempt and an ancillary order determining the substantive rights of the parties.  Section 3-1-523(2), MCA; *Grounds v. Coward*, 2000 MT 128, ¶ 6, 300 Mont. 1, 2 P.3d 822.  A "lone contempt order" is not subject to direct appeal.  *Lee v. Lee*, 2000 MT 67, ¶ 37, 299 Mont. 78, 996 P.2d 389.  As a threshold matter, we conclude that the order finding Tonia in contempt is appealable under this standard.  The contempt order was issued as part of the District Court's fifteen-page Findings of Fact, Conclusions of Law, and Order on Motions, which followed a show cause hearing addressing at least nine separate motions.  In that order, the District Court ordered David's parenting time reinstated as of February 7, 2014; ordered all future visitation exchanges to take place at the Musselshell County Sheriff's Office; denied Tonia's motion to transfer venue of the parenting action; granted Tonia's motion to transfer venue of the stepparent adoption and termination of parental rights; determined David had not been ordered to pay VA benefits for the support of A.C.M. to Tonia; and determined Tonia had likely influenced A.C.M.'s stated desire not to have a relationship with David.  The District Court adjudicated several matters affecting the rights of the parties related to their parenting dispute.  The fifteen-page all-motions order was not a "lone contempt order," and is therefore subject to review.  *Grounds*, ¶ 9; *Lee*, ¶ 37.

¶26 We review the contempt order first to determine whether the district court acted within its jurisdiction. *Novak*, ¶ 37. The trial court has continuing jurisdiction in matters of child custody. *In re Marriage of Toavs*, 2002 MT 230, ¶¶ 19-20, 311 Mont. 455, 56 P.3d 356 (citing *Billings v. Billings*, 189 Mont. 520, 522, 616 P.2d 1104, 1105 (1980)). The District Court issued the decree of dissolution and final parenting plan in 2003, and thus acted within its continuing jurisdiction when it determined Tonia was in contempt for failure to comply with the final parenting plan.

¶27 Next, we review whether the evidence supports the contempt order. *Novak*, ¶ 37. David's affidavit states that he has had no contact with A.C.M. since April 19, 2013. The affidavit by Ritz is consistent with David's account and clearly establishes that Tonia did not bring A.C.M. to the exchange location on April 19, 2013. Although Tonia's affidavit disputes the exact date of David's last phone call with A.C.M., she does not deny that David has not seen A.C.M. since April 2013, or that under the final parenting plan, he is entitled to visitation on alternate weekends. Tonia claims her failure to comply with the final parenting plan is due to A.C.M.'s independent refusal to attend visitation with her father.

¶28 The District Court, however, found that A.C.M.'s desire to have no contact with her father was likely not an independent choice, but the result of Tonia's influence. The District Court found Tonia had repeatedly attempted to limit David's visitation, citing several motions by Tonia to modify the final parenting plan, her petition for an order of protection on behalf of A.C.M., her support of Silvester's petition for stepparent adoption and termination of David's parental rights, and her motion to suspend David's visitation.

The District Court found Tonia had not attempted to persuade or encourage A.C.M. to visit David, as she claimed. Instead, Tonia had "likely done everything she [could] to alienate A.C.M.'s affections" from her father. The District Court also found Tonia had acquiesced in the wishes of her 14-year-old daughter rather than attempting to comply with the visitation schedule.

¶29 The evidence supports the District Court's findings. The affidavit by Silvester states that "A.C.M. made her choice to stop seeing Dave." Ritz confirms this, stating, "In the time I have known the Petitioner and Silvester they have never said no to A.C.M. when it comes to Dave. The Petitioner always gives A.C.M. the choice whether she wants to go or not." A.C.M. provided two signed, hand-written statements, one of which was later typed by Tonia in the form of an affidavit and signed by A.C.M. before a notary. In her affidavit, A.C.M. states that her mother "has mostly given me the choice if I want to go see Dave or not." This evidence supports the District Court's finding that rather than attempting to persuade A.C.M. to visit David as required by the final parenting plan, Tonia acquiesced to A.C.M.'s desires.

¶30 There is also evidence supporting the District Court's finding that Tonia likely influenced A.C.M. in her purported decision not to visit her father. In her affidavit, Tonia states her belief that David has engaged in "lies, manipulation, control, verbal abuse and intimidation," and has a need "to be in control" with respect to A.C.M. Tonia says she believes David wants A.C.M. to live with him so she can care for him if his health deteriorates. Tonia says she believes David's refusal to allow A.C.M. to participate in sports is potentially harmful to A.C.M. She also asks the court for an order allowing

14

A.C.M. to retrieve her belongings from David's home, and attaches a list of items hand-written by A.C.M. The affidavit by Silvester states that he believes David to be "demanding and manipulative." He says he and Tonia agreed A.C.M. should submit a statement to the court. A.C.M.'s hand-written statement, which is not typed or notarized but was included by Tonia as an exhibit, includes assertions which largely mirror statements made by Tonia. A.C.M. says David wants her to live with him because of his injured leg, and that he "has to be in control to the point that he won't even let me play sports in school." A.C.M. says she is afraid David will try to take her away from her mother, and that he has done so on two occasions, the first of which was in 2003, when A.C.M. was only four years old.

¶31 Considering the obviously and undisputedly contentious nature of the proceedings, the statements of Tonia and her husband indicating their strong and persistent belief that visitation with David is not in A.C.M.'s best interest, the steps taken by Tonia to facilitate A.C.M.'s personal involvement in the court proceedings, and the lengthy history of filings by Tonia intended to limit David's visitation, the District Court's finding that Tonia's actions contributed to A.C.M.'s reluctance to visit David is supported by evidence in the record. The District Court concluded, and we agree, that Tonia's claim that she is willing to help David repair his relationship with A.C.M. is not credible, particularly in light of her support of Silvester's petition to terminate David's parental rights. It is also clear that Tonia encouraged, if not solicited outright, A.C.M.'s active involvement in legal actions taken against her father.

¶32 As noted by the District Court, whether a parent may be held in contempt when a child refuses to attend court-ordered visitation because the parent has either acquiesced in or encouraged the child's refusal is an issue of first impression in Montana. A district court has the responsibility to enforce its own orders, *In re Marriage of Baer*, 1998 MT 29, ¶ 45, 287 Mont. 322, 954 P.2d 1125, and may exercise its discretionary contempt power as necessary to enforce the dignity and authority of the court, *In re Marriage of Winters*, 2004 MT 82, ¶ 41, 320 Mont. 459, 87 P.3d 1005. In family law cases, "the best remedy to [e]nsure respect for the law and the orderly progress of relations between family members split by dissolution is to give effect to the contempt powers of the District Court." *Milanovich v. Milanovich*, 201 Mont. 332, 336, 655 P.2d 963, 965 (1982); *see also Grounds*, ¶ 3; *Lee*, ¶ 29. This is particularly true in high-conflict cases like the present one. Recognizing this, we agree with those courts concluding that where a parent fails to make reasonable efforts to require a recalcitrant child to attend visitation as provided for in a parenting plan, the parent has not made a good faith effort to comply with the parenting plan, and a contempt order may be appropriate. *See, e.g., In re Marriage of Rideout*, 77 P.3d 1174, 1181-83 (Wash. 2003) (citing *MacIntosh v. MacIntosh*, 749 N.E.2d 626, 630-31 (Ind. Ct. App. 2001); *Smith v. Smith*, 434 N.E.2d 749, 752 (Ohio Ct. App. 1980); *Commonwealth ex rel. Ermel v. Ermel*, 469 A.2d 682, 685 (Pa. Super. Ct. 1983)).

¶33 We find additional support for this conclusion in our statutes. A parenting plan must be determined "in accordance with the best interest of the child." Section 40-4-212(1), MCA. "[F]requent and continuing contact with both parents" is considered

16

to be in a child's best interest, unless determined otherwise. Section 40-4-212(1)(l), MCA. Further, it is recognized that "continuous and vexatious parenting plan amendment actions" may have "adverse effects" on a child. Section 40-4-212(1)(m), MCA. A parent is also required to make a good faith effort to comply with the provisions of a parenting plan, or the dispute resolution provisions therein, before moving to amend the plan. Section 40-4-212(4)(b), MCA. The policies reflected in these statutory provisions support our conclusion that a parent must make a good faith effort to require an unwilling child to attend visitation with a noncustodial parent if visitation is provided for in a parenting plan.

¶34    A parent is not "a powerless bystander" in the decisions and actions of a child, and has "an obligation to attempt to overcome the child's resistance" to visitation. *Rideout*, 77 P.3d at 1182. A parent has "a great deal of influence over [a child's] ideas and feelings," which carries with it an affirmative responsibility to nurture in the child a positive regard for his or her other parent. *Ermel*, 469 A.2d at 685. Although we recognize the difficulty, at times, of compelling a child's compliance with parental—or judicial—directives, a parent must make a good faith effort to do so. *Hancock v. Hancock*, 471 S.E.2d 415, 419 (N.C. Ct. App. 1996) (contempt order not appropriate where mother "did everything possible short of using physical force or a threat of punishment to make the child go with his father."). This obligation is in no way met where a parent allows a child to disregard a court-ordered parenting plan, passively submits to the child's judgment about his or her own parenting arrangements, or actively

17

fosters animosity and distrust toward the other parent.[2]  The District Court was justified in exercising its contempt powers to "[e]nsure respect for the law and the orderly progress of relations between family members" in this case.  *Milanovich*, 201 Mont. at 336, 655 P.2d at 965.  We affirm.

¶35     2.  *Did the District Court err when it denied Tonia's motion to hold David in contempt for failure to pay child support?*

¶36     Tonia argues the District Court was required to grant her motion to hold David in contempt by default because David failed to file a timely response.  Uniform District Court Rule 2(a) provides that within 14 days of service of a movant's brief, the opposing party shall file an answer brief.  Rule 2(b) states that failure to file briefs may subject a motion to summary ruling.  Tonia's motion to find David in contempt for failure to pay support was filed September 10, 2013.  On September 27, 2013, she moved for entry of default.  David did not file an answer brief until October 3, 2013.  Rule 2(b), however, allows a trial court discretion to either grant or deny an unanswered motion.  *State v. Loh*, 275 Mont. 460, 466, 914 P.2d 592, 596 (1996).  The District Court acted within its discretion when it decided to consider Tonia's motion on the merits rather than issue a summary ruling.

---

   [2]  Throughout these proceedings, the parties appear to have held the belief that upon reaching 14 years of age, a child is permitted to make his or her own parenting decisions.  This is not the case.  When considering a motion to amend a parenting plan, a court may consider, among other factors, whether "the child is 14 years of age or older and desires the amendment." Section 40-4-219(1)(c), MCA.  While the child's wishes may be one appropriate consideration, they are not dispositive.  Regardless of the child's wishes, the parenting plan may not be amended unless the court finds the amendment necessary to serve the best interest of the child. Section 40-4-219(1), MCA.  The best interest of the child must be determined by the court, and not by the child.

¶37 The District Court reviewed the extensive record in this case and determined that although David had been ordered to pay Tonia those benefits designated for the support of Tonia and B.J.M., he was never ordered to pay Tonia benefits he received for the support of A.C.M. Moreover, the benefits designated for Tonia and B.J.M. were terminated in September 2003. David was ordered to pay $494.00 per month in child support for A.C.M., and the District Court found he had paid in excess of that amount. Accordingly, the District Court concluded David was not in violation of the support order. The record supports this conclusion. The District Court's decision not to find David in contempt for failure to pay support was not a blatant abuse of discretion. *Lutes*, ¶ 7. We affirm.

¶38 *3. Did the District Court err when it imposed sanctions against Tonia?*

¶39 Tonia claims the District Court erred when it granted David's motion to impose sanctions against her pursuant to M. R. Civ. P. 11. The District Court ordered Tonia to pay David's reasonable attorney fees and costs incurred in pursuing certain actions. The District Court also required Tonia to obtain leave of court before filing any future pleadings relating to the parenting of A.C.M. The amount of attorney fees and costs has not yet been determined.

¶40 Pursuant to M. R. App. P. 6(1), a party may appeal from a final judgment or from specified final orders, including, as previously noted, certain contempt orders in family law proceedings under M. R. App. P. 6(3)(j). A final judgment is one that "conclusively determines the rights of the parties and settles all claims in controversy in an action or proceeding, *including any necessary determination of the amount of costs and attorney*

19

*fees awarded or sanction imposed.*" M. R. App. P. 4(1)(a) (emphasis added). While the contempt order is appealable under M. R. App. P. 6(3)(j), the award of sanctions is not yet a final judgment as defined by M. R. App. P. 4(1)(a), because it does not include a necessary determination of the amount of costs and attorney fees awarded. Tonia's appeal from the award of sanctions is therefore premature, and we remand for entry of a final judgment, including a determination of the amount of costs and attorney fees awarded.

## CONCLUSION

¶41 We affirm the order finding Tonia in contempt for failure to comply with the final parenting plan. We affirm the order refusing to find David in contempt for failure to pay support. We decline to address the merits of the M. R. Civ. P. 11 sanctions against Tonia, and remand for further proceedings consistent with this Opinion.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE