No. 01-805

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 246

IN RE THE MARRIAGE OF

JENNIFER L. SCHMIEDING,

      Petitioner and Respondent,

  and

PETER J. SCHMIEDING,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin, Cause No. DR-97-199,
                Honorable Thomas A. Olson, Judge Presiding

COUNSEL OF RECORD:

      For Appellant:

          Richard J. Dolan, Goetz, Gallik, Baldwin & Dolan, P.C., Bozeman,
          Montana

      For Respondent:

          Edmund P. Sedivy, Jr., Sedivy, White & White, P.C., Bozeman, Montana

                        Submitted on Briefs:   May 23, 2002

                                  Decided:   September 18, 2003

Filed:

             _____
                              Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Peter J. Schmieding (Peter) appeals from the Findings of Fact, Conclusions of Law, and Final Order entered by the Eighteenth Judicial District Court, Gallatin County, ordering him to pay Jennifer L. Schmieding (Jennifer) unpaid past and future maintenance, denying Peter's request for reimbursement of expenses associated with the parties' two marital residences, and awarding Jennifer attorney fees. We affirm in part, reverse in part, and remand.

¶2      Peter raises three issues on appeal which we rephrase as follows:

¶3      **1.  Did the District Court err in awarding Jennifer maintenance for the months of April through October 1999?**

¶4      **2.  Did the District Court err in denying Peter's motion for reimbursement of expenses associated with the parties' Big Sky and Hayrake Lane homes?**

¶5      **3.  Did the District Court err in modifying its original maintenance award, granting Jennifer future maintenance?**

FACTUAL AND PROCEDURAL BACKGROUND

¶6      This is the second appeal stemming from the dissolution of Jennifer and Peter's marriage. Extensive facts regarding earlier stages of the dissolution proceeding are set forth at *In re the Marriage of Schmieding*, 2000 MT 237, 301 Mont. 336, 9 P.3d 52, and, with the exception of relevant details, are not repeated here.

¶7      Jennifer and Peter's marriage was dissolved by court decree on August 25, 1999. On April 6, 1999, the District Court had entered Findings of Fact, Conclusions of Law, and an

2

Order, granting dissolution of the marriage and providing for the distribution of the marital estate, including distribution of Peter's dental practice to Peter. Additionally, the court ordered that certain marital properties were to be sold, and required Peter to pay Jennifer maintenance in the amount of $3,000 per month beginning April 1999 and terminating upon Jennifer's death or remarriage, or upon her receipt of one-half of the proceeds from the anticipated sale of three assets–the parties' home in Big Sky, Montana, its net worth approximately $490,000; their home on Hayrake Lane in Bozeman, Montana, its estimated net value at $535,000; and the parties' business interest in Hardwood Building, Inc., valued at $19,578 and for which Jennifer received her one-half interest in August 1999. Pursuant to the court's April 1999 Findings of Fact and Conclusions of Law, which were amended in June 1999 and incorporated into the decree, Peter was to pay the monthly mortgage and tax obligations on the Big Sky and Hayrake homes and would receive credit for all mortgage and maintenance expenses, less rent received, as a cost of sale prior to distribution of the proceeds.

¶8     Peter sold the Big Sky and Hayrake homes on or about May 3, 1999, and deposited the funds in a joint bank account on May 5, 1999. Both parties' signatures were required to withdraw funds from the account and Peter and Jennifer each withdrew $35,000 for personal use during the period in which the account was open. Funds were also withdrawn during this time to pay a number of bills, including a joint tax bill and a joint accounting bill, as well as several expenses associated with the construction of the Hayrake home. Also, and despite Jennifer's objection at the time to the payment, the parties withdrew $102,500 from the

3

account in order to repay money loaned by Peter's mother for construction of the Hayrake residence. However, the repayment of the loan to Peter's mother is not an issue on appeal.

¶9    After selling the homes and depositing the proceeds in the joint account, Peter made no additional maintenance payments to Jennifer. The joint account was closed on October 19, 1999, with Jennifer and Peter each receiving one-half of the remaining funds in the account, totaling $341,469.93 each, on October 21, 1999.

¶10   In June 2000 Jennifer brought a motion before the District Court to restore and modify the maintenance award, for contempt, and for enforcement of the maintenance award. This motion was the result of a disagreement between the parties about whether Peter owed maintenance to Jennifer after May 5, 1999–the date the sale proceeds from the Big Sky and Hayrake homes were deposited in the joint account. Peter cross-moved the District Court for reimbursement of certain expenditures he made in connection with the Big Sky and Hayrake homes, which Jennifer opposed.

¶11   A bench trial was held on October 2, 2000. Regarding his claim for reimbursement, Peter testified that after his separation from Jennifer, he paid all of his business and personal expenses, including expenses for the construction of the Hayrake home, from a bank account containing marital funds commingled with the proceeds from his dental practice.

¶12   Jennifer introduced evidence that she needed $8,836.25 per month to cover her monthly expenses, that she was $2,438.78 short each month, and that this deficit forced her to liquidate some of the marital assets she received in the dissolution. Jennifer explained that

4

her money shortage was due to the trial court's over-estimation of the value of the parties' Big Sky and Hayrake homes which were sold pursuant to the court's April 1999 order.

¶13   In June 2001, the District Court entered Findings of Fact and Conclusions of Law which determined that Jennifer and the parties' three children indeed had a monthly income need of $8,836.25 per month and were $2,010 short in meeting their monthly needs. Based on this finding, the District Court awarded Jennifer future maintenance in the amount of $2,010 per month, retroactive to June 2000. The District Court further ordered Peter to pay Jennifer unpaid maintenance for the months of April through October 1999 for a total of $18,204, plus interest. The court, however, found "no basis to interfere" with regard to Peter's request for reimbursement of expenses associated with the sale of the parties' Big Sky and Hayrake homes, implicitly denying Peter's motion for reimbursement. Peter appeals.

STANDARD OF REVIEW

¶14   While we apply a clearly erroneous standard in reviewing a district court's findings of fact regarding maintenance modification, we review a district court's determinations regarding substantial and continuing changed circumstances and unconscionability for an abuse of discretion. *In re Marriage of Brown* (1997), 283 Mont. 269, 272, 940 P.2d 122, 124; *In re Marriage of Jarussi*, 1998 MT 272, ¶ 7, 291 Mont. 371, ¶ 7, 968 P.2d 720, ¶ 7. Findings are clearly erroneous if they are not supported by substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces it a mistake has been made. *In re Marriage of Brown*, 283 Mont. at 272, 940 P.2d at 122; *In*

5

*re Marriage of Toaves*, 2002 MT 230, ¶ 23, 311 Mont. 455, ¶ 23, 56 P.3d 356, ¶ 23. The test for an abuse of discretion is whether the trial judge acted arbitrarily without employment of conscientious judgment or has exceeded the bounds of reason resulting in substantial injustice. *In re Marriage of Toaves*, ¶ 23. We review a trial court's conclusions of law to determine whether they are correct. *In re Marriage of Moss*, 1999 MT 62, ¶ 13, 293 Mont. 500, ¶ 13, 977 P.2d 322, ¶ 13.

¶15 Finally, we note that while *In re Marriage of Jarussi* and other cases cited herein concern modification of child support obligations and not maintenance, the standards governing modification of both types of cases are the same. *In re Marriage of Brown*, 283 Mont. at 272, 940 P.2d at 124.

DISCUSSION

¶16 **Did the District Court err in awarding Jennifer maintenance for the months of April through October 1999?**

¶17 Peter argues the District Court erred in awarding Jennifer maintenance for the months of April through October 1999. Noting that the court ordered him to pay maintenance to Jennifer only until she received her one-half share of the proceeds from the sale of the parties' Big Sky and Hayrake homes and the Hardwood building business interest, Peter contends Jennifer had full access to the sale proceeds beginning May 5, 1999. Therefore, he argues that Jennifer was not entitled to receive maintenance after that date.

¶18 In response, Jennifer points out that she did not actually receive her full one-half share of the sale proceeds until October 21, 1999, when the joint account was closed and the

6

money finally distributed. She further asserts that the amount she ultimately did receive, $341,469.93, was $145,530 less than the trial court originally estimated. Consequently, argues Jennifer, by the time she filed her motion to modify and restore maintenance, she was considerably short in meeting her monthly expenses.

¶19 The District Court indeed found that Jennifer received no maintenance payments from Peter after the Big Sky and Hayrake homes were sold. Taking judicial notice of its April 1999 Findings of Fact and Conclusions of Law, the court concluded that Peter owed Jennifer unpaid maintenance for the period of April to October 1999. The April 1999 Findings of Fact and Conclusions of Law provide in relevant part:

> Peter shall pay to Jennifer as monthly maintenance, the sum of $3,000 per month until she remarries or is deceased, *or when she receives one-half (½) of the proceeds from the sale of the Big Sky home, Hayrake home, and Hardwood Building, Inc. business*.

(Emphasis added.)

¶20 We have previously held that awards of maintenance are within the broad discretion of the district court. *In re Marriage of Burris* (1993), 258 Mont. 265, 270, 852 P.2d 616, 619. We do not disturb a district court's award of maintenance provided that the award is based upon substantial evidence and exhibits no clear abuse of discretion. *In re Marriage of Burris*, 258 Mont. at 270, 852 P.2d at 619.

¶21 The plain language of the District Court's original maintenance order required Peter to pay Jennifer $3,000 in monthly maintenance until she remarries, is deceased, "or when she receives one-half (½) of the proceeds from the sale of the Big Sky home, Hayrake home, and

7

Hardwood Building, Inc. business." Because Jennifer did not receive her full one-half interest in these marital assets prior to final distribution of the joint account on October 21, 1999, and neither died nor remarried, we conclude the District Court did not abuse its discretion in ordering Peter to pay Jennifer unpaid maintenance for the months of April to October 1999.

¶22 **Did the District Court err in denying Peter's motion for reimbursement of expenses associated with the parties' Big Sky and Hayrake Lane homes?**

¶23 During the dissolution proceedings, prior to the sale of the Big Sky and Hayrake homes, the District Court entered the following order:

> Peter shall be responsible for the monthly mortgage payment of $1,385 per month and property taxes until the Big Sky home sells. The Big Sky home is currently rented, and the monthly rentals shall be used to make the monthly mortgage payments and tax payments, with Peter to pay the balance. Peter shall also be responsible to pay all mortgage obligations on the Hayrake Lane home as well as taxes. At time of sale of either house, Peter shall receive credit for all mortgage and maintenance expenses paid less rent received as a cost of sale prior to distribution of the proceeds.

¶24 Essentially, the District Court's order required Peter to pay the monthly mortgage and tax obligations on the Big Sky and Hayrake homes and provided that he would receive a credit for all mortgage and maintenance expenses, less rent received, as a cost of sale prior to distribution of the proceeds. After the homes were sold, however, Jennifer and Peter could not agree on the amount that should be credited to Peter. Peter, therefore, brought a cross-motion to be reimbursed in the amount of $23,577.90.

8

¶25 In its June 2001 Findings of Fact and Conclusions of Law, the District Court found that Peter had deducted a number of construction expenses and a loan to his mother from the Big Sky and Hayrake homes' sale proceeds. However, the court declined to grant the motion, concluding only that it would "not intervene in Respondent's [Peter's] deduction of expenses for the Big Sky and Hayrake homes, nor repayment of the loan to his mother."

¶26 Peter argues the District Court had a duty to enforce its own orders and therefore erred in failing to credit him for his expenses as previously ordered. Although we agree the District Court failed to adequately articulate its reasons for failing to enforce its earlier order, we nonetheless affirm the District Court on this issue because we conclude its decision is supported by the record. It is well settled that we will affirm a district court's decision which reached the right result, regardless of the court's reasoning. *In re Marriage of Shupe* (1996), 276 Mont. 409, 419, 916 P.2d 744, 750.

¶27 Peter testified that, with the exception of those expenses paid from the joint account prior to final disbursement, he paid all his expenses, including mortgage payments on the Hayrake residence, from an account containing both marital funds and monies from his dental practice. Despite his extensive accounting of expenses, Peter conceded that "to specify dollar-for-dollar coming in and going out would be impossible."

¶28 The following exchange between Peter and Edmund Sedivy, Jennifer's counsel, illustrates the manner in which Peter handled the expenses.

Mr. Sedivy: Now, let's talk about how you paid expenses.

Peter: Okay.

9

Q: You had a checking account; is that correct?

A: That's correct.

Q: With Big Sky bank?

A: Yes.

Q: And into the Big Sky bank checking account, you put all of your business proceeds from your dental work --

A: Yes, um-hum.

Q: – paid all your business expenses.

A: Yes.

Q: You deposited all of the monies that came from the Florida contract with regards to the sale of the business into that account?

A: That's correct.

Q: You deposited all of the monies that came from the Florida sale of the building into that account?

A: Correct.

Q: And you just commingled it all in one account and wrote all of it – paid all the bills, right?

A: That's exactly right, yeah.

. . . .

Q: Did you think that all those Florida monies were your monies?

A: Of course not.

Q: So, you thought it was okay to pay her [Jennifer] the support . . . by using these monies that were coming from those contracts?

A:    Everything was in the same account.  So, to specify dollar-for-dollar coming in and going out would be impossible.

Q:    And you've not – you can't today tell us whether you spent one dime of your dental-earned money in your dental business for any of these expenses in this house, can you?

A:    I can.

Q:    Which one did you pay with a dental bill or from a dental income? . . . Show me which bill you paid with dental income.

A:    It's impossible to do that, however --

Q:    That's what I thought.

¶29    Later testimony revealed that Peter's income from his dental practice was insufficient to cover the expenses he paid prior to the sale of the Big Sky and Hayrake homes.  In 1999, Peter netted only $8,496 from his dental practice yet, at trial, sought reimbursement in an amount exceeding $23,000.  From this evidence, the District Court reasonably could have concluded that Peter paid a substantial part of the expenses, including those associated with the Big Sky and Hayrake homes, from commingled marital funds.

¶30    In *Marriage of Hanni*, 2000 MT 59, ¶¶ 25-28, 299 Mont. 20, ¶¶ 25-28, 997 P.2d 760, ¶¶ 25-28, we held that a spouse's pre-marital property may become part of the marital estate in a dissolution proceeding when commingled with other marital assets.  *Marriage of Hanni*, ¶ 25.  Although the proceeds from Peter's dental practice were not pre-marital property, the situation here is analogous.  Peter's testimony clearly shows that he paid the expenses associated with the Big Sky and Hayrake homes from an account in which he had inseparably commingled marital funds with those of his dental practice.  Consequently, Peter

11

was simply unable to demonstrate by sufficient evidence the amount of reimbursement, if any, to which he was entitled.

¶31 Peter does not contend that the expenses associated with the Big Sky and Hayrake homes were Jennifer's responsibility. Rather, these out-of-pocket costs were simply to be reimbursed to Peter. However, because Peter paid the expenses from commingled marital funds, and failed to support his claim for reimbursement by substantial evidence, we conclude the District Court did not abuse its discretion in denying Peter's claim.

¶32 **3. Did the District Court err in modifying its original maintenance award, granting Jennifer future maintenance?**

¶33 Peter next takes issue with the District Court's modification of the maintenance award, arguing that the court erred in failing to make the required findings of changed circumstances or unconscionability pursuant to § 40-4-208(2)(b)(i), MCA, prior to awarding Jennifer future maintenance. We agree.

¶34 Section 40-4-208(2)(b), MCA, provides in relevant part:

> Whenever the decree proposed for modification contains provisions relating to maintenance or support, modification under subsection (1) may only be made:
> (i) upon a showing of changed circumstances so substantial and continuous as to make the terms unconscionable.

¶35 Under this provision, changed circumstances and unconscionability are distinct factors which must be independently addressed. *In re Marriage of Jarussi*, ¶ 7. Thus, the district court must make formal findings of fact that substantial and continuing circumstances make the terms of the original support order unconscionable. *In re Marriage of Bliss* (1980), 187

12

Mont. 331, 335, 609 P.2d 1209, 1212. Further, the change in circumstances may not be speculative, future, or possible conditions. *Gall v. Gall* (1980), 187 Mont. 17, 20, 608 P.2d 496, 498.

¶36 After finding that the circumstances surrounding the maintenance obligation have substantially and continuously changed, the district court must then make a determination of unconscionability. *In re Marriage of Jarussi*, ¶ 7; *see also In re Marriage of Clyatt* (1994), 267 Mont. 119, 123, 882 P.2d 503, 506. Determinations of unconscionability are made on a case-by-case assessment. *In re Marriage of O'Moore*, 2002 MT 31, ¶ 8, 308 Mont. 258, ¶ 8, 42 P.3d 767, ¶ 8. As previously articulated, a trial court must find both substantial and continuing changes and unconscionability before modifying a previous order of support. *Marriage of O'Moore*, ¶ 11.

¶37 Here, the District Court made the following findings regarding Jennifer's monthly income needs:

> 6. The court found that Petitioner [Jennifer] and the three (3) children had a monthly need of income of $8,836.25 per month. The court found that $2,539 would be paid by Respondent as child support, and that Petitioner would be receiving $1,529 from the Florida building note. The court imputed income to her of $1,300 per month. These items totaled $5,368, leaving $3,000 to be paid by Respondent as maintenance.
>
> 7. According to Petitioner, she needs $8,836 a month, and is actually receiving only $5,360, leaving her $3,476 short. If the full Florida payments are included she is receiving $6,826, or $2,010 per month short.

¶38 The court made no other findings or conclusions regarding the § 40-4-208(2)(b)(i), MCA, requirements. Specifically, the court made no findings regarding changed

13

circumstances so substantial and continuing as to render the original terms of the support order unconscionable.

¶39    We have held that the exact wording of § 40-4-208(2)(b), MCA, need not appear in a district court's findings as long as we can determine whether, in light of the evidence and the findings based thereon, (1) the district court's findings were not clearly erroneous; and (2) the court adhered to the standards outlined in the statute in making its judgment. *In re Marriage of Jarussi*, ¶ 10.  In this case, however, the District Court's findings of fact fail to indicate whether the court considered or applied the requirements of § 40-4-208(2)(b), MCA. *See Torma v. Torma* (1982), 198 Mont. 161, 166, 645 P.2d 395, 398 (trial court's findings and conclusions inadequate regarding petition for modification of child support because it is not apparent that the standards of § 40-4-208(2)(b), MCA, were considered or applied).

¶40    Further, the District Court made no express findings regarding unconscionability. While we recognize the court need not "couch its findings in the express 'unconscionable' language of the statute, it must make findings by which we may determine it addressed the § 40-4-208(2)(b)(i), MCA, unconscionability requirement." *Jarussi*, ¶ 11.  We conclude the District Court failed to do so here.

¶41    We note that Jennifer asks this Court to define unconscionability as a matter of law. However, we decline to do so.  Determinations of unconscionability are made on a case-by-case basis. *In re Marriage of Kummer*, 2002 MT 168, ¶ 18, 310 Mont. 470, ¶ 18, 51 P.3d 513, ¶ 18.  In the absence of the necessary findings, we must conclude the District Court failed to follow the statutory requirements pursuant to § 40-4-208(2)(b)(i), MCA, and

14

therefore was powerless to modify the original maintenance award. As a result, we hold that the District Court abused its discretion in modifying Peter's maintenance obligation, awarding Jennifer future maintenance.

¶42 Finally, Peter urges this Court to overrule, or alternatively, clarify its holding in *In re Marriage of Rush* (1985), 215 Mont. 498, 500, 699 P.2d 65, 66, in which we stated that the statutory requirements of § 40-4-203, MCA, governing the initial consideration of maintenance within a dissolution proceeding, are inapplicable to maintenance modification cases. Peter argues that the rules of statutory construction dictate that the factors set forth in § 40-4-203, MCA, must be read in conjunction with the modification requirements of § 40-4-208(2)(b), MCA. However, because we conclude the District Court's failure to adhere to the threshold requirements of § 40-4-208(2)(b)(i), MCA, to be dispositive, we do not reach Peter's argument regarding § 40-4-203, MCA, and our holding in *Rush*.

¶43 Affirmed in part, reversed in part, and remanded.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART

15