FILED

05/11/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0363

DA 20-0363

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 119N

IN RE THE MARRIAGE OF:

DIANE KRANTZ,

      Petitioner and Appellee,

  and

KEITH KRANTZ,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DR-17-76
Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tiffany A. Nunnally, Five Valleys Law, P.L.L.C., Missoula, Montana

      For Appellee:

          Hilly McGahan, Attorney at Law, Missoula, Montana

                    Submitted on Briefs:  January 13, 2021

                              Decided:  May 11, 2021

Filed:

                          _____
                                  Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition will be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant Keith Krantz (Keith) appeals the June 2020 judgment of the Montana Twentieth Judicial District Court, Lake County, modifying his spousal maintenance obligation to Appellee Diane Krantz (Diane). We affirm.

¶3 In July 2019, after two years of contested litigation, the District Court issued a final decree dissolving the parties' 29-year marriage, equitably apportioning their marital assets and debts, and requiring Keith to make specified spousal maintenance payments to Diane. At the time of dissolution, the parties were both in their 60's with significant marital debt. For most of the marriage, they primarily resided on Keith's family farm, which is owned by the Krantz Family Limited Partnership in which Keith is a limited partner. Since early in the marriage and at the time of dissolution, Keith was employed full-time by Montana Rail Link (MRL) as a welding foreman and his wages were the primary source of the marital income. His annual MRL income at the time of dissolution was approximately $63,000. During the marriage, Diane primarily worked and contributed in an unpaid

capacity as a homemaker and on the farm.[1] Based on her part-time employment as a school bus driver, her annual income at the time of dissolution was approximately $16,000.

¶4 The final decree awarded Keith 100% of his limited partnership interest in the family farm and 100% of his employment-related 401k retirement account. It awarded Diane 100% of her school district public employees' retirement interest, a specified share of the divisible portion of Keith's federal Railroad Retirement Act (RRA) benefits,[2] and spousal maintenance in the amount of $700 per month until Keith retires from MRL. The maintenance award included a phase-out provision that, upon Keith's MRL retirement, would reduce his monthly maintenance obligation by the combined monthly amount of Diane's court-apportioned share of his divisible RRA benefits and her separate "divorced spousal annuity" under the RRA.[3] As part of the marital estate apportionment under § 40-4-202, MCA, the decree ordered Keith to pay Diane a separate marital estate equalization sum, immediately payable by lump sum or in monthly installments until satisfied.

---

[1] The parties were also the primary providers during their marriage for Diane's special-needs grandson from a prior relationship. The grandson was 14 years old when they separated in 2017 and Diane continued to provide for him thereafter.

[2] See 45 U.S.C. § 231, et seq.

[3] While not entirely clear from the final decree, the briefing on appeal, and the underlying record, the RRA apparently independently entitled Diane to a "divorced spousal annuity," separate and apart from any share of the divisible portion of Keith's federal railroad retirement benefits equitably apportioned to her by the court under § 40-4-202, MCA.

¶5    On August 19, 2019, Keith filed a motion for post-judgment relief to correct an asserted error in the amount of marital debt apportioned to him and for corresponding adjustment of his marital estate equalization payment obligation. On September 23, 2019, while Keith's motion was still pending, Diane filed a separate contempt/show cause motion for enforcement of the decree based on alleged delinquencies in his monthly maintenance and marital estate equalization obligations, and the negative effect of her entitlement to maintenance and the marital estate equalization distribution on her contemplated eligibility for aid under the Supplemental Nutrition Assistance Program (SNAP) and Temporary Assistance for Needy Children (TANF) programs. On January 27, 2020, without reference to Diane's motion, the District Court issued an amended final decree correcting the asserted error in Keith's marital estate apportionment and correspondingly reducing his marital estate equalization payment obligation from $67,515.78 to $61,956. The amended decree did not alter his previously imposed monthly maintenance obligation.

¶6    On February 21, 2020, following Diane's filing of a notice of issue and an updated payment delinquency notice, the District Court set a hearing for April 15, 2020, on her pending contempt/show cause motion regarding Keith's delinquent monthly maintenance and equalization payment obligations. In March 2020, Keith retired from MRL earlier than anticipated. As he acknowledges on appeal, his early retirement caused Diane's RRA divorced spousal annuity to be only $757 a month, rather than $1,122 per month as

4

anticipated had he not retired early.[4]  On April 20, 2020, days before the oft-rescheduled hearing on Diane's contempt/show cause motion, Keith filed for federal Chapter 13 bankruptcy debt reorganization and protection from his court-ordered maintenance and marital estate equalization debts, *inter alia*.  Pursuant to 11 U.S.C. § 362, and subject only to certain narrow exceptions, the bankruptcy filing automatically stayed all debt enforcement or collection actions against him.

¶7      In response, Diane filed a motion seeking suspension or elimination of the maintenance phase-out provision in the decree in this matter, thereby extending and continuing Keith's monthly maintenance obligation to offset the asserted shortfall in her income caused by the combination of his unanticipated early retirement, the bankruptcy stay, and his ongoing delinquencies in his court-ordered maintenance and martial estate equalization obligations.  In June 2020, the District Court granted Diane's motion pursuant to § 40-4-208(2)(b)(i), MCA, and 11 U.S.C. § 362(b)(2)(A)(ii) (automatic stay exemption for modification of domestic support obligations).  Pending "further order," the court ordered that Keith's original $700 per month maintenance obligation would continue even after his early MRL retirement and Diane's resulting receipt of monthly payments under her RRA "divorced spousal annuity and her portion of [his] monthly retirement benefits."[5]

---

[4] Keith acknowledges the negative effect of his early retirement on Diane's anticipated RRA divorced spousal annuity, but asserts that it is of no consequence because the final decree did not expressly specify a particular retirement date.

[5] The court further ordered Keith to make all maintenance payments by direct deposit into Diane's bank account and that the maintenance obligation "shall not terminate upon the death of either party[,] nor shall it terminate upon the remarriage of Diane."

The revision essentially suspended the previously ordered spousal maintenance phase-out provision pending further order of the court. Keith timely appeals.

¶8 District courts may modify a previously imposed maintenance obligation only "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." Section 40-4-208(2)(b)(i), MCA; *In re Marriage of Schmieding*, 2003 MT 246, ¶¶ 35-36, 317 Mont. 320, 77 P.3d 216. As used in § 40-4-208(2)(b)(i), MCA, the term "unconscionable" is undefined and we have previously held that courts must thus interpret and apply it upon "scrutiny of the underlying facts" of each particular case. *In re Marriage of Brown*, 283 Mont. 269, 272, 940 P.2d 122, 123 (1997) (citation omitted).[6] In context of the referenced statutory standard as applicable here, at least encompassed within the statutory term "unconscionable" are circumstances where one spouse has unexpectedly interrupted previously ordered payments to a spouse who is otherwise "unable to be self-supporting through appropriate employment[,] or is the custodian of a child whose condition or circumstances make it [in]appropriate" to require the subject spouse "to seek employment outside the home," thereby denying that spouse "sufficient [resources] to provide for [his or her] reasonable needs" as previously ordered. *See* §§ 40-4-203(1)(a)-(b), and -208(2)(b)(i), MCA; *McNeff v. McNeff*, 207 Mont. 297,

---

[6] Outside of the contract law context, the pertinent plain meaning of the term "unconscionable" is an "affront[] [to] the sense of justice . . . or reasonableness . . . [s]hockingly unjust or unfair." *Unconscionable*, *Black's Law Dictionary* (11th ed. 2019). See also *Merriam-Webster*, https://www.merriam-webster.com/dictionary/unconscionable (Accessed Apr. 26, 2021) (defining unconscionable as "shockingly unfair or unjust : excessive, unreasonable").

300-01, 673 P.2d 473, 475-76 (1983) (applying § 40-4-208(2)(b) unconscionable standard in reference to spousal maintenance criteria). *See also Mooney v. Brennan*, 257 Mont. 197, 203, 848 P.2d 1020, 1024 (1993) (similarly applying § 40-4-208(2)(b) unconscionable standard in reference to child support criteria). Section 40-4-208(2)(b)(i), MCA, generally requires courts to make distinct findings of fact regarding the predicate "changed circumstances and [resulting] unconscionability." *Schmieding*, ¶¶ 35-36 (internal citations omitted). The requisite findings of fact need not be phrased in the express language of § 40-4-208(2)(b)(i), MCA, but must be at least minimally sufficient for assessment of whether the court adequately considered the requisite statutory criteria. *Schmieding*, ¶¶ 39-40 (internal citations omitted).

¶9     Here, the analysis under § 40-4-208(2)(b), MCA, necessarily begins with the previously adjudicated circumstances upon which the court ordered maintenance in the first place—Diane was in her 60's, had no prior earning history, skills, or experience other than as a homemaker, farm worker, and part-time school bus driver earning $16,000 per year, and would continue as the primary provider for her special-needs grandson. Keith has not asserted, much less demonstrated, that any of those circumstances have changed. Moreover, as noted by the District Court, the final decree provided for Keith to timely make monthly equalization payments *in addition to* his specified monthly maintenance obligation. Manifestly implicit in the original decree and the subsequent maintenance modification order is the court's recognition that Diane critically depends on Keith's timely payment of his previously ordered maintenance and marital estate equalization obligations

7

for her support and obligations. *See* §§ 40-4-202(1) and -203(1)(a)-(b), MCA (in re relationship between a spouse's apportioned marital estate share and need for maintenance).

¶10 From that baseline, the court's findings reflect that the automatic stay prompted by Keith's bankruptcy filing has deprived Diane of her right and ability to collect delinquent and future equalization payments from him during the indefinite term of the bankruptcy. Further, Keith does not dispute the asserted delinquencies in his maintenance and marital estate equalization obligations on appeal, and acknowledges the negative effect of his early retirement on Diane's RRA annuity.

¶11 As to the resulting unconscionability of the original maintenance award, the District Court found that, regardless of a factual dispute as to the extent to which Keith's income has increased since entry of the original decree, Diane is now "in an increasingly dire financial situation." We agree that the court could and should have conducted an evidentiary hearing and made additional findings supporting that general finding. However, under the particular circumstances of this case, the court's ultimate finding of fact regarding Diane's dire financial condition is manifestly supported by record facts not subject to genuine material dispute—the pertinent facts previously adjudicated in the original decree, the effect of the bankruptcy stay, the acknowledged negative effect of Keith's early retirement, and the undisputed delinquencies in his maintenance and marital estate equalization payment obligations. Under these circumstances, the District Court's ultimate finding of fact that "[t]he circumstances in this matter have so substantially

changed that the [maintenance] phase-out provision . . . is no longer conscionable" is not clearly erroneous, regardless of the fact that Diane is now receiving her RRA "divorced spousal annuity" ($757 per month) and the existence of a question of fact as to the extent of Keith's income increase.

¶12    Keith asserts that the District Court separately abused its discretion in ordering that the modified maintenance obligation "shall not terminate upon the death of either party[,] nor shall it terminate upon the remarriage of Diane." We would agree that this provision is seemingly unsupported and unexplained on this record, and would thus be problematic if standing alone. However, the District Court expressly ordered that the maintenance modification "should continue uninterrupted until further [o]rder of this [c]ourt." While not the model of clarity and ambiguous as to duration, the language of the order, read in context as a whole in the light most favorable to the prevailing party, manifests that its intended effect was to temporarily remedy an immediate inequity in a state of flux as a result and pending resolution of Keith's unanticipated federal bankruptcy proceeding.[7] Under the unique circumstances of this case, we hold that the District Court did not erroneously modify Keith's monthly maintenance obligation based on a clearly erroneous finding of fact, erroneous application or conclusion of law, or arbitrary reasoning, lacking

---

[7] Keith further cursorily asserts, *inter alia*, that the District Court's maintenance modification order improperly impacts bankruptcy estate assets. Aside from the lack of legal authority and analysis supporting that assertion, its merit is in any event a matter for the federal bankruptcy court to consider beyond the purview of this Court.

conscientious judgment or exceeding the bounds of reason, resulting in substantial injustice.

¶13    We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules.  It shall not be cited and does not serve as precedent.  The case title, cause number, and disposition will be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.  Affirmed.

/S/ DIRK M. SANDEFUR


We concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE