FILED

03/22/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0284

DA 21-0284

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 60N

IN RE THE MARRIAGE OF:

BRIDGET J. KELLY,

      Petitioner and Appellee,

  v.

JOSEPH S. CAMP, III,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
                  In and For the County of Park, Cause No. DR-14-40
                  Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            P. Mars Scott, Jason M. Scott, P. Mars Scott Law Offices, Missoula, Montana

      For Appellee:

            Kevin S. Brown, Erin E. Harris, Paoli & Brown, P.C., Livingston, Montana

                        Submitted on Briefs:  February 23, 2022

                                  Decided:  March 22, 2022

Filed:

                      _____
                             Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant Joseph S. Camp, III (Joe) appeals the July 20, 2020 Findings of Fact, Conclusions of Law, and Interim Order issued by the Sixth Judicial District Court, Park County. The Interim Order denied Joe's request to modify his spousal maintenance payments to his former wife, Appellee Bridget J. Kelly (Bridget), which were previously awarded upon the dissolution of the couple's marriage in 2018. Joe also appeals the District Court's April 13, 2020 Decision and Order, which granted Bridget's Motion for a Protective Order from Joe's discovery requests seeking information regarding Bridget's financial situation. We affirm both Orders of the District Court.

¶3 Joe and Bridget met in Hollywood in 1991 while working in the film industry. For over thirty years, Joe has worked as a prominent Assistant Director for Hollywood films and television series. Bridget is a former film costume designer. Joe and Bridget's relationship was recognized in court as a valid common law marriage in 1995. During their marriage the couple had two children, the first of whom died in 2011. The couple's second child reached the age of majority in 2021. Following the birth of the couple's children, Bridget gave up her career as a costume designer to become a stay-at-home mother while Joe continued to work full-time.

¶4 Joe and Bridget separated in 2013 when Joe moved out of the couple's marital home in Livingston, MT. The parties filed for divorce in 2014, at which point Bridget began working full-time as a paraeducator for the Livingston School District while Joe continued his work in the film industry. After the couple's separation, Joe voluntarily provided monthly support payments of $3,000 to Bridget and continued to pay the mortgage on the marital home. However, in January 2016, Joe reduced his monthly support payment to $1,500, causing Bridget to seek a formal maintenance award in court. On March 18, 2016, the Sixth Judicial District Court awarded Bridget temporary spousal maintenance payments of $3,000 per month pending the outcome of the couple's dissolution trial.

¶5 The dissolution trial was held on September 18 and 19, 2018. Joe and Bridget took opposing positions concerning whether Joe should continue to be responsible for Bridget's financial maintenance. On November 19, 2018, the District Court issued its Findings of Fact, Conclusions of Law, and Interim Order in the matter (November 2018 Order). The couple's dissolution was later finalized by the District Court's December 6, 2018 Final Decree (December 2018 Decree), which fully incorporated the District Court's November 2018 Order. The District Court required Joe to pay permanent spousal maintenance of $3,000 to Bridget until Joe's retirement. Specifically, Joe was ordered to pay Bridget $1,250 per month for maintenance and $1,750 per month in child support up until their child's eighteenth birthday in 2021, at which point Bridget's spousal maintenance award would increase to $3,000 per month until Joe began to receive pension benefits from the Director's Guild of America. The District Court also ordered Joe to continue to pay the monthly mortgage on the couple's marital home, which the Court awarded to Bridget. Last,

3

the District Court required Joe to pay Bridget a lump sum of $10,000, due by September 6, 2019, for Bridget to purchase a new vehicle. The District Court noted that Bridget's average net income was approximately $38,204 per year for the years 2016 and 2017. In contrast, Joe's annual gross income from his film work often exceeded $400,000 per year and that—after deducting personal expenses—Joe's average net income for the years 2015, 2016, and 2017 was approximately $222,812 per year.[1] The District Court held that "Joe's ability to earn income and acquire assets far exceed[ed] Bridget's" due to the parties' respective jobs.

¶6 On July 31, 2019, less than eight months after the District Court entered its December 2018 Decree, Joe filed a Motion for Modification of the Decree (Joe's Motion to Modify) seeking to reduce his payments to Bridget. Specifically, Joe sought an "indefinite suspension" of his "obligation to pay [Bridget's] spousal support, [Bridget's] mortgage payment, and the $10,000 vehicle payment." Joe's Motion to Modify also alleged that the District Court had committed an error when calculating Joe's child support obligation and requested that his monthly child support obligation be corrected from $1,750 per month to either $997 or $527 per month, subject to the court's discretion.

¶7 Joe argued that his circumstances had changed substantially following the entry of the December 2018 Decree, allowing for modification under § 40-4-208(2)(b)(i), MCA,

---

[1] Specifically, the court noted that Joe's "gross income" from his work as an Assistant Director was $460,674 in 2015, $296,359 in 2016, and $480,612 in 2017. The District Court also noted that "it appears that Joe deducts personal expenses" from his net income calculation and commented that "Joe has significant, documented cash withdrawals for which he is unable to account."

(stating that the modification of a decree for maintenance or support will only be granted "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable"). Joe's Motion to Modify did not mention Bridget's own health, finances, employment, or need for these maintenance payments. Instead, in asserting "changed circumstances," Joe's motion focused exclusively on the purported changes to his own situation, including his poor health, his financial incapacity to fulfill these obligations due to his accumulation of tax and credit card debt,[2] and his then-existing state of unemployment in July of 2019. Joe's motion also repeated an argument he first made during the parties' September 2018 dissolution trial—namely, that his personal health issues were affecting his ability to work full-time and earn income. Notably, however, despite the claims contained in Joe's Motion to Modify, the record reflects that Joe was once again employed as an Assistant Director on three different movie and television projects from September 2019 through March 2020 and that Joe continued to earn a level of income consistent with his income statements from previous years.[3] After filing his motion in July 2019, Joe ceased making his monthly spousal maintenance and monthly mortgage payments to Bridget without the court's consent.

---

[2] With regard to Joe's assertion of credit card debt, the District Court's July 2020 Order—which denied Joe's modification request—noted that Joe consistently "put other debts and obligations ahead of his obligation to pay spousal support and the mortgage on the home awarded to Bridget." Specifically, the court found that "Joe is not using his credit cards to purchase only the bare necessities"; instead, the court noted that Joe was engaging in credit card spending on things such as surfing, astrologers, limousine services, jewelry, and cigars.

[3] In particular, the District Court's July 2020 Order noted that "Joe's pay stubs for October 2019 through December of 2019 . . . reflect[ed] net earnings of $10,000 to $14,000 per week."

¶8     On September 6, 2019, Bridget filed a Response Motion, which opposed Joe's Motion to Modify (Bridget's Response Motion). Bridget's Response Motion argued that Joe's personal circumstances had not changed since the December 2018 Decree was issued; it did not raise any arguments related to Bridget's own personal circumstances. Additionally, on September 27, 2019, Bridget filed a Verified Motion to Enforce Orders and for Contempt of Court (Bridget's Contempt Motion). Bridget's Contempt Motion sought to compel payment of the spousal maintenance and mortgage obligations that Joe had begun withholding. Bridget's Contempt Motion also sought to hold Joe in contempt for withholding these payments.

¶9     In February of 2020, Joe served Bridget with a large number of discovery requests related to Bridget's personal finances, claiming that these requests were relevant to his Motion to Modify. Joe requested Bridget's monthly living expenses, earnings, sources of income, retirement accounts, real estate holdings, and mortgage and property tax payments. Joe also demanded the following additional materials from Bridget: car ownership information; account numbers, statements, and balances for all financial accounts, including credit card statements; 2018 and 2019 tax returns; billing arrangements with her attorneys, including hourly rates, services provided, and fees incurred; the sources of any attorney retainer payments; sources of any borrowed money and outstanding financial obligations; and an accounting of all out-of-state travel. There were additional requests as well.

¶10     In response, Bridget filed a Motion for a Protective Order, arguing Joe's requests were overbroad and irrelevant to his Motion to Modify, which was premised solely upon

alleged changes to Joe's own personal health, finances, and employment status. The District Court's April 13, 2020 Decision and Order Regarding Motion for Protective Order (April 2020 Protective Order) held that the majority of Joe's requests were "overly broad." Specifically, the court held that Joe's requests were "at odds with his representations to the Court regarding his reasons for seeking modification of his obligations." The April 2020 Protective Order, however, still required Bridget to submit the following documents to Joe: information related to "Bridget's current employment, earnings, and deductions"; any evidence of "other income" earned by Bridget "for 2018 through the present"; Bridget's "paychecks/stubs/documentation concerning any other money earned"; and Bridget's 2018 and 2019 Federal and State income tax returns. Bridget complied and provided Joe with these items.

¶11 On May 12, 2020, the District Court held a joint hearing on Joe's pending Motion to Modify and Bridget's pending Contempt Motion. At this hearing, Joe called his primary care provider and his therapist as witnesses. They testified regarding the effect on Joe's income of his diabetes, elevated blood pressure, and anxiety. Bridget's counsel also elicited testimony regarding Bridget's own finances—and her continued need for the mortgage and maintenance payments that Joe had been withholding—in support of Bridget's pending Contempt Motion.

¶12 On July 20, 2020, the District Court issued a detailed Findings of Fact, Conclusions of Law and Interim Order (July 2020 Order). First, the court held that Joe had not met his burden of showing that a significant change in circumstances had occurred in the time since the December 2018 Decree was entered. As a result, the July 2020 Order upheld most of

7

the December 2018 Decree and did not alter the terms of Joe's mortgage obligation and $10,000 lump sum payment. Additionally, the court refused to modify Joe's spousal maintenance obligation, but it did modify Joe's child support obligation from $1,750 to $1,585 per month based on a prior child support calculation error. The court also retroactively modified Joe's unpaid monthly child support obligations, dating back to August 2019, in accordance with this new amount. Second, the court granted Bridget's Contempt Motion based on Joe's unilateral decision to withhold his court-ordered spousal maintenance and mortgage payments. As a sanction, the court required Joe to pay Bridget's attorney's fees.

¶13    The July 2020 Order, which was titled an "Interim Order," was made final by the court's August 18, 2020 Supplemental Judgment and Order (August 2020 Supplemental Order), subject to three exceptions. First, "given COVID-19's effects on the film industry," the court's Supplemental Order relieved Joe of his obligation to make spousal support payments "for the period of March 2020 through October 2020," but ordered that they were to resume beginning in November 2020. Second, the court clarified that, despite its reduction of Joe's child support obligation to $1,585 per month, Joe's maintenance obligations would remain $1,250 per month until the couple's child turned eighteen in 2021. At this point, Joe's maintenance obligation would increase to $3,000 per month— consistent with the court's December 2018 Decree. Third, the court's August 2020 Supplemental Order extended the due date for Joe's $10,000 lump sum payment to September 6, 2021.

¶14 Joe filed his notice of appeal on June 9, 2021. Joe's appeal presents two issues for review. First, Joe requests that this Court reverse the District Court's April 2020 Protective Order. Second, Joe asks this Court to reverse and remand the District Court's July 2020 Order on the ground that Joe's asserted health issues constituted a "substantial and continuing change in circumstances," despite the District Court's assertion to the contrary.

¶15 We review a district court's ruling on a discovery matter, including the grant or denial of a protective order, for an abuse of discretion. *In re S.C.*, 2005 MT 241, ¶¶ 16, 18, 328 Mont. 476, 121 P.3d 552. The test for an abuse of discretion is "whether the district court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *In re Marriage of Toavs*, 2002 MT 230, ¶ 23, 311 Mont. 455, 56 P.3d 356 (citations omitted). In the absence of the written consent of both parties, a motion to modify or terminate spousal maintenance, support, or property distribution requires "a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." Section 40-4-208(2)(b)(i), MCA. "While we apply a clearly erroneous standard in reviewing a district court's findings of fact regarding maintenance and modification, we review a district court's determinations regarding substantial and continuing changed circumstances and unconscionability for an abuse of discretion." *In re Marriage of Schmieding*, 2003 MT 246, ¶ 14, 317 Mont. 320, 77 P.3d 216 (citations omitted).

¶16 Joe's first argument alleges that the District Court erred in issuing its Protective Order. First, Joe asserts § 40-4-203, MCA, which establishes that the financial resources of both parties in a dissolution action are relevant to a court's maintenance determination,

9

should likewise be considered in any proceeding involving modification of a prior maintenance award. Joe reasons he had a right to additional discovery regarding Bridget's finances because "Bridget's financial information was relevant to a request to modify."

¶17 Under M. R. Civ. P. 26(b)(1), parties may only conduct discovery on matters "relevant to any parties' claim or defense[.]" Joe's Motion to Modify did not raise any argument related to a potential change in Bridget's income. Instead, Joe's motion exclusively argued that a "substantial and continuing change in circumstances" had occurred based on *his* mental and physical health, then-existing lack of employment, and cashflow problems. However, M. R. Civ. P. 26(b)(1) dictates that parties may only conduct discovery on matters "relevant to any parties' claim or defense," and, notably, Bridget's Response Motion to Joe's Motion to Modify did not raise any defenses to Joe's motion that were related to her own personal financial situation.[4]

¶18 The District Court held most of Joe's discovery requests were "overly broad" and irrelevant to the content of Joe's Motion to Modify. The District Court concluded that Joe's "discovery requests [were] at odds with his representations to the [District Court] regarding his reasons for seeking modification of his obligations." We agree. Joe's discovery requests were not relevant to his Motion to Modify, which was based only on

---

[4] Specifically, Bridget's defenses to Joe's assertions regarding his then-existing unemployment and health issues were centered on the following arguments: that Joe's health status had not changed since the parties' December 2018 Decree was entered; that Joe's employment situation was only temporary; and that Joe's temporary unemployment was based on the cyclical nature of employment in the film and television industry rather than on Joe's inability to find work.

allegedly changed circumstances related to Joe. Joe has failed to demonstrate the District Court abused its discretion under this reasoning.

¶19 Second, Joe asserts that the District Court improperly "prevented [him] from acquiring any evidence to support an [eventual] argument that Bridget's need for financial support had diminished[.]" However, Joe ultimately still received a significant amount of information related to Bridget's finances during discovery. In particular, the court still ordered Bridget to provide Joe with her 2018 tax return, her earnings statements for 2018 through 2020, her W-2 forms and paystubs, and additional information related to her adjusted gross income for the 2019 tax year. The court held this specific financial information would prove relevant if Joe's request to modify his child support obligation, due to an alleged calculation error, was successful. We conclude the District Court did not abuse its discretion under this reasoning.

¶20 Third, Joe argues the District Court was inconsistent when it permitted Bridget to testify about her finances at the parties' hearing. Joe alleges that the District Court's discussion of Bridget's finances in its July 2020 Order directly conflicts with the earlier relevancy determination in its April 2020 Protective Order. In making this argument, Joe cites the following factual finding from the District Court's July 2020 Order, which discusses Bridget's May 2020 testimony:

> Bridget testified that Joe's refusal to make his court-ordered maintenance payments has caused her to incur substantial financial hardship. . . . She has cancelled her gym membership and DirecTV. She can no longer afford to take [her child] to get [her] nails or hair done. She has been unable to afford to take [her child] to visit college campuses. She was also unable to purchase the types of gifts for [her child's] birthday that she could afford when Joe was paying maintenance.

11

Despite Joe's assertion, no abuse of discretion occurred here, as the District Court indicated that Bridget's testimony about her finances was factually relevant for the alternate purpose of showing the effect on Bridget of Joe's withheld payments. Although it was not relevant to Joe's Motion to Modify, Bridget's testimony was necessary to adjudicate Bridget's Contempt Motion and determine the severity of any resulting sanctions on Joe. Indeed, the record reflects that the parties' May 2020 hearing was a joint hearing on both Joe's Motion to Modify and Bridget's Contempt Motion, and the District Court's express statements during Bridget's testimony indicate that the court remained fully aware of its earlier relevancy determination from its April 2020 Protective Order. Moreover, the section of the July 2020 Order that denied Joe's Motion to Modify was kept separate from the section of the July 2020 Order that granted Bridget's Contempt Motion. Importantly, the portion of the Order that ruled on Joe's Motion to Modify references only Joe's personal health, cash flow, and employment situation and concluded that Joe "has not made the threshold showing" required to modify his court-ordered support payments to Bridget.[5]

¶21    Joe's final argument alleges that the District Court erred when it concluded Joe's Type I Diabetes, hypertension, and anxiety did not constitute a "substantial and continuing change in circumstances." In support of this contention, Joe argues that the District Court

---

[5] Joe's appeal further notes that the District Court's July 2020 Order holds out as a "Conclusion of Law" that "there has been no proof submitted that Bridget's financial need for spousal support has diminished since the time the Final Decree was entered." Notably, however, this sentence appears *after* the Court's holding that "[b]ecause Joe has not made the threshold showing of ongoing changed circumstances with regard to his employment, his finances, or his health so significant as to render the current support order unconscionable, the Court declines to modify the Final Decree as to maintenance." We conclude, based on the entire record, that the District Court's Conclusion of Law regarding Bridget's finances does not constitute an "abuse of discretion."

"disregarded" the May 2020 hearing testimony of Joe's primary care physician and therapist. Joe also asserts that the District Court ignored three additional affidavits from two of Joe's chiropractors and one acupuncturist.

¶22 There is ample evidence in the record to support the District Court's determination that Joe's health ailments did not constitute a "substantial and continuing change" in Joe's position which would render maintenance "unconscionable" under § 40-4-208(2)(b)(i), MCA. Notably, the testimony of Joe's primary care physician and therapist articulated key facts weighing against changed circumstances: Joe's diabetes and hypertension were "well-managed"; Joe was not considered "disabled" by virtue of any of his health conditions; Joe's health conditions did not prevent him from working; and Joe's diabetes, hypertension, and anxiety had all first arisen prior to the District Court's formal dissolution of the parties' marriage in 2018. Furthermore, when Joe's spousal maintenance was initially ordered in 2018, the District Court took Joe's health concerns into account. Joe, in his testimony at that 2018 hearing, argued against a spousal maintenance award by asserting that he was a "Type 1, insulin-dependent diabetic" with "increase[ed] blood pressure" and that he held a "high-stress job"—the same arguments he made in his Motion to Modify.

¶23 Additionally, the record indicates that in the time since Joe filed his Motion to Modify, Joe worked on several additional film and television projects and continued to earn substantial sums of money despite his cited health concerns. The District Court's decision to deny Joe's Motion to Modify was well-reasoned, and the court did not abuse its discretion. The District Court's denial of Joe's Motion to Modify is affirmed.

13

¶24 The District Court's July 2020 Interim Order—and the subsequent August 2020 Supplemental Order which incorporated the terms of this Interim Order—are affirmed. Additionally, the District Court's April 2020 Protective Order did not improperly limit Joe's ability to conduct discovery into Bridget's finances.

¶25 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶26 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE